# UTERMEHLE v. NORMENT.

## ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 63.　Argued November 28, 29, 1904.—Decided February 20, 1905.

Mere ignorance of the law standing alone does not constitute any defense against its enforcement, and a mistake of law, pure and simple, without the addition of any circumstances of fraud or misrepresentation constitutes no basis for relief at law or in equity and forms no excuse in favor of the party asserting that he made the mistake.

The rule of law is that a party taking a benefit of a provision in his favor under a will is estopped from attacking the validity of the instrument; and where an heir at law has taken a benefit under the will, acquiesced in its validity for many years, permitted the legatees and devisees to act upon such consent and acquiescence, has so changed his position on that account that he cannot be restored to it, and meanwhile witnesses have died, this estoppel is not affected because he was at the time ignorant of this rule of law.

THE plaintiff in error seeks by this writ to review the judgment of the Court of Appeals of the District of Columbia (not yet reported), affirming the decree of the Supreme Court of that District, sitting as a court of probate, admitting the will of George W. Utermehle to probate as a will of real estate, by virtue of the jurisdiction conferred upon the court by the act of Congress of June 8, 1898. 30 Stat. 434. The same will had been admitted to probate in the District in the year 1889 as a will of personalty (which was all the jurisdiction at that time possessed by the court), with the concurrence and consent of the plaintiff in error. The facts upon which the case hinges are in substance the following:

George W. Utermehle, the testator, died in the city of Washington on the sixteenth day of April, 1889, leaving a large amount of real and personal property, the real estate amounting, as is said, to about a million dollars, and the personalty to between six hundred thousand and a million of dollars. He left a will, bearing date December 7, 1887, which

appeared on its face to have been duly executed for the conveyance of real estate. The testator left him surviving his widow, two daughters—Mrs. Taylor and Mrs. Norment—and the plaintiff in error, his grandson, the son of his deceased son, as his sole heirs at law and next of kin. The widow was named executrix of the will, and she propounded the same for probate April 26, 1889. It was duly admitted to probate on that day, on the petition of the widow, as executrix, with the written consent of the daughters and the plaintiff in error. The executrix gave a bond in the sum of $20,000 for the payment of all just debts and claims against the deceased and for the payment of the legacies bequeathed by the will, and letters were issued to her. She duly administered upon the estate, paid the funeral expenses and other charges, and the legacies mentioned in the will, including that to the plaintiff in error. She filed no inventory but made a statement of account on the fourteenth day of May, 1890. The personal property, except such as was otherwise disposed of under the will, and in payment of debts and legacies, she retained for herself, as sole and absolute owner, in accordance with the terms of the will. Of this amount it is said that she thereafter disposed of a large part in charities. By the will of George W. Utermehle, he bequeathed to each of his three nieces, residing in Germany, the sum of three thousand dollars; he devised to his grandson, the plaintiff in error, the property known as the Young Law Building in Washington; he also bequeathed to him the interest due or to become due on a note for $750, secured on a lot in Washington, and also the principal of the same; he bequeathed to his wife, Sarah Utermehle, all the rest of his personal property, of every kind, to be taken by her in lieu of dower, and to be disposed of by her by deed, will or otherwise, as she pleased; he devised to her his then present residence and the property adjoining, being square 765 in the city of Washington; he then bequeathed all the rest and residue of his real estate wherever situated, and all the real estate of which he might die seized and possessed, other than

that already devised, to his two daughters, Mamie Norment and Rosa Taylor, as tenants in common, share and share alike; he appointed his wife sole executrix of his will and re-voked all other wills theretofore made by him; he suggested that, as he had no debts and his personal estate was to go to his wife, a very moderate bond should be required of her as executrix.

After the death of his grandfather the plaintiff was present at his late residence and heard this will read.

Immediately after the reading of the will he left the house, but Mrs. Taylor, one of his aunts, as he was leaving, asked him to come over the next day, which he did. He testified on this trial that he arrived at the house and went into the dining room, and Mrs. Taylor, Mrs. Norment and his grand-mother were there. Mrs. Taylor did the talking, and started the conversation by stating to the plaintiff in error that the will had virtually cut him off, and that if it had not been for her and the Doctor (her husband) the plaintiff in error would not have been left the property called the Young Law Build-ing, but that they had had his grandfather paint it up and put it into repair, so that when it came into his possession it would not be any expense to him to put it in condition at the time. She further said that his grandmother was left all the personal property, which amounted to almost, if not quite as much as that which they (his aunts) would receive under the will, and that when his grandmother died she proposed to make him right, to make him equal with them by equaliz-ing his share; that his grandmother wanted to know what the mortgage on his farm was, as she understood that there was a mortgage; that she wanted to pay it off; that she wanted to start him off without any debts on him. His grandmother was sitting there at the time but said nothing. He was asked what the mortgage was on his farm. He told them $11,500. The only remarks made were those between Mrs. Taylor (his aunt) and himself, and the only statement he made was what the mortgage on the farm was. He also testified on the trial

below that he believed that what was then promised him, as to what his grandmother would do when she made her will; that he had no doubt whatever that she would fulfill her promise. His grandmother told him at that interview she would give him a check for the mortgage in a few days, and he then went home. Subsequently and on the twenty-sixth day of April, 1889, he signed the consent to the probate of the will. He did it in reliance, as he said, upon the promise above mentioned.

From the time of the probate of his grandfather's will up to the time of the death of his grandmother, he did nothing to attack the will of his grandfather, but relied upon the promise made by or on the part of his grandmother, the day after the funeral. After the probate of his grandfather's will he received from his grandmother, as the executrix, the legacy spoken of therein, and gave receipt therefor; he also took possession of the real estate given him by the will, called Young's Law Building, and received the rents therefor for nearly two years, and (on March 24, 1891) sold it for $20,000, and kept the proceeds. The sisters took the real estate devised to them by the will. They commenced an action of partition and the real estate was partitioned between them, and each thereafter treated the real estate set off to her under the partition as her own absolute property. Some of it they conveyed and disposed of so that it passed beyond their control. They assumed and supposed that the real estate given to them in the will was their own, as the plaintiff in error had consented to the probate of the will, and had made no objections whatever since that time to its validity, or questioned it in any way.

On the thirteenth of March, 1893, the grandmother died, leaving a will dated July 5, 1889, less than three months after the promise alleged to have been made by her, or in her behalf, to the plaintiff in error immediately after the funeral of his grandfather. The will of the grandmother was admitted to probate, by the consent of all the parties interested, on the

seventeenth day of March, 1893. The two daughters were executrices under the will, but, on objection being made by the plaintiff in error to their receiving commissions, they waived their right to them, and performed the services without pay. By the terms of this will the two aunts and the plaintiff in error were made to share equally in the estate of the grandmother, which turned out to amount to something over $200,000, the grandmother having, during her lifetime, as is stated, disposed of a large amount of the personal property bequeathed to her under the will of her husband, in charities. When the terms of the will of the grandmother were read to the plaintiff in error he testified on the trial below that he then said, "So far as I am concerned I have got the worst of and I have got to stand it. I never made but one mistake in my life, and that was when I held still once before, and now I have to stand still."

He received under the will of his grandmother $84,256.87, being the same share as was received by each of his aunts. He received, under the will of his grandfather and that of his grandmother a total of between $140,000 and $150,000. After the death of his grandmother he took no steps showing an intention to contest the will of either, until May 19, 1900, which was ten years after the settlement of the estate of his grandfather and nearly seven years after the settlement of the estate of his grandmother. On the date named he addressed two letters of the same tenor, one to Mrs. Taylor and the other to Mrs. Norment, in which he states that he had been under a misapprehension and was ignorant regarding his rights at the time his grandfather died, and that misrepresentations had been made to him from those interested, touching his rights and interest in his grandfather's estate, and he therefore notified them that he denied the validity of the paper writing alleged to be the last will and testament of his grandfather, which had been admitted to probate as a will of personal property, and stated that he contended that the alleged will had never been operative in connection with the real property,

and that his claim to the building and ground known as Young's Law Building was merely a one-third interest in the property as tenant in common with the other heirs at law of his deceased grandfather; he also stated that he held himself ready to account, upon demand, to his two aunts for the one-third interest to which each was entitled in that real estate, as two of the heirs at law of his grandfather, in both the property, and the rents and profits from the same; from his grandfather's death; that he held himself as ready, upon demand, to make proper settlement with both of his aunts for the $750 note, with the accrued interest thereon, which had been all paid, and was pretended to have been bequeathed to him under the will of his grandfather. Plaintiff in error testified that he did not receive any answer to either letter, nor any communication from either of his aunts, and soon thereafter he instituted a suit in ejectment, and on June 9, 1900, filed a *caveat* in the Probate Court against the validity of the will, as a will of personalty. The plaintiff in error there charged that the will was procured by the fraud, undue influence and duress of Mrs. Taylor and her husband, and that the testator had no testamentary capacity when the paper was signed by him. Mrs. Taylor and Mrs. Norment answered this *caveat*, and at the same time filed a petition asking for probate of the will of their father, of December 7, 1887, as a will of real estate, under the act of Congress of June 8, 1898, above mentioned. To this petition the plaintiff in error made answer.

Pending proceedings in the Probate Court on this *caveat* of the plaintiff in error, and the petition for the probate of the will as one of real estate, Mrs. Taylor, one of the aunts, died, January 22, 1901, leaving a will by which she devised all of her estate and property to her husband, subject to an annuity to her son, and nominated her husband as executor. This will was duly admitted to probate on the eighteenth day of March, 1901, and letters testamentary were issued to Dr. Taylor (the husband). Thereupon he filed his petition in these

proceedings, wherein he stated that the property devised and bequeathed to him by his wife was in fact to be held in trust by him for the benefit of his son and his children, with the reservation of certain rights and powers for himself, and he asked that the parties named by him be made parties to the present proceedings in place of Mrs. Taylor, and they were accordingly made such.

The court then determined that issues should be formulated between the parties, to be tried in the Probate Court with a jury, under the act of June 8, 1898, and there were six issues thus drawn: The first was in regard to the question whether the plaintiff in error was estopped to deny the validity of his grandfather's will as a will of personal property; the second, whether he was estopped to deny its validity as one disposing of real property; third, was a question as to the testamentary capacity of the grandfather; the fourth, whether there was undue influence; fifth, whether there was fraud in obtaining the will from the grandfather; and sixth, whether there was duress.

It was stipulated that the question of the application of the statute of limitations, which was raised by the *caveat* and petitions, and all other questions, should be reserved for future determination by the court. Charles H. Utermehle was made plaintiff for the purpose of the trial, and all the other parties were made defendants On March 17, 1902, a jury was impanneled and the trial commenced. The plaintiff proceeded to give his testimony, addressed to the question of estoppel and to an explanation of his delay in asserting his alleged rights. When the counsel for plaintiff in error announced their testimony on the question of estoppel closed, they were about to proceed with their testimony on the other issues, but counsel for the defendants objected, and asked the court to direct a verdict against the plaintiff on the issue of estoppel, and against the plaintiff upon all the other issues. After consideration the court instructed the jury to render a verdict against the plaintiff on each and all the issues, and a verdict

was thus rendered and recorded.　Thereupon an order or
decree was rendered affirming the decree of April 26, 1889, ad-
mitting the grandfather's will to probate as and for a will of
personalty, and also admitting it now to probate as and for a
will of real estate under the act of Congress of 1898.　The
Court of Appeals having affirmed this decree, the case has
come to us by writ of error on the part of plaintiff.

　　*Mr. D. W. Baker* and *Mr. Wilton J. Lambert* for plaintiff
in error:

　Devisees cannot invoke the doctrine of estoppel who are
charged with exercising undue influence or fraud in the mak-
ing of the will, and in making false and fraudulent misrep-
resentations to prevent the plaintiff in error from investigat-
ing the facts surrounding the making of the will, this last
fraud being merely ancillary to the principal fraud charged.
*Neblett* v. *MacFarland,* 92 U. S. 193.

　Plaintiff acted in ignorance of the facts and in ignorance of
his rights and is not estopped from attacking the will after
he ascertained the truth.　*Fisher* v. *Boyce,* 81 Maryland, 46;
*Re Miller,* 159 Pa. St. 562; *Meddill* v. *Snyder,* 61 Kansas, 15;
*Lee* v. *Templeton,* 73 Indiana, 317; *Fletcher* v. *Holmes,* 25
Indiana, 469; *Andrews* v. *Lyons,* 11 Allen, 350; *Brant* v. *Vir-
ginia Coal Co.,* 93 U. S. 335; *Henshaw* v. *Bissell,* 18 Wall. 271;
*Bank* v. *Farwell,* 19 U. S. App. 262; *Halloran* v. *Halloran,* 137
Illinois, 112; *Clinton* v. *Maddan,* 50 Connecticut, 84; *Cumber-
land C. & I. Co.* v. *Sherman,* 20 Maryland, 117; *Barbour* v.
*Moore,* 4 App. D. C. 535; *Magee* v. *Welsh,* 18 App. D. C. 177.
Where a person claims title to real property the doctrine of
laches can never be invoked where a proceeding is taken
within the statutory period.　*Pence* v. *Langdon,* 99 U. S. 578.

　While a person accepting and holding a beneficial interest
under a will cannot, either in equity or law, assert an inde-
pendent title in other property against the will, after hav-
ing received a legacy in ignorance of this rule, he may, upon
being informed of the rule, return the legacy to the execu-

tor and give him notice that he elects not to take it, and the rule will not apply. *Watson* v. *Watson*, 128 Massachusetts, 152; *Spread* v. *Morgan*, 11 H. L. 587; *Wheeler* v. *Smith*, 9 How. 55; *Sparlook* v. *Brown*, 91 Tennessee, 261; *Williams* v. *Williams*, 63 Maryland, 371.

It was not necessary for caveator to make any tender except to offer to account for anything received from the estate, and he has always been ready to account. He was not compelled to first make restitution. *Bank* v. *Curran*, 72 Connecticut, 349; *Peaslee's Will*, 25 N. Y. Supp. 940; *Probate Judge* v. *Stone*, 44 N. H. 593; *Wheeler* v. *Smith*, 9 How. 55; *Thayer* v. *Knote*, 59 Kansas, 181; *Montgomery* v. *Pickering*, 116 Massachusetts, 227; Bigelow on Fraud, 424; *Howard* v. *Railroad Co.*, 14 App. D. C. 297; *Lyon* v. *Allen*, 11 App. D. C. 549; *Union Pacific* v. *Harris*, 158 U. S. 326; *Girard* v. *Carr Co.*, 123 Missouri, 358; *Westlake* v. *St. Louis*, 77 Missouri, 47; *O'Donnell* v. *Clinton*, 145 Massachusetts, 461; *Smith* v. *Holyoke*, 112 Massachusetts, 517; *Mullen* v. *Old Colony R. R. Co.*, 127 Massachusetts, 86. Cases where payment back has been required can be distinguished. *Hamblett* v. *Hamblett*, 6 N. H. 333; *Holt* v. *Rice*, 54 N. H. 398; *Fisher* v. *Boyce*, 81 Maryland, 46; *Madison* v. *Lamon*, 170 Illinois, 82; *Soule's Will*, 3 N. Y. Supp. 259; *Chipman* v. *Montgomery*, 63 N. Y. 228. The action of caveatees relieved the caveator from any other action than offering to account.

Where defendant refuses, on a tender to receive the money, it is not necessary that the money should be actually produced. *Barker* v. *Parkinhorn*, 2 Wash. C. C. 144; *Hazzard* v. *Barnabas*, 10 Cush. 67. Nor is a technical tender required in a court of equity. *Parkinton* v. *Turvis*, 128 Indiana, 186; *Shuee* v. *Shuee*, 100 Indiana, 477. See also *Wright* v. *Young*, 70 Am. Dec. 453; *Hazzard* v. *Loring*, 10 Cush. 67; *Dorsey* v. *Barbee*, 12 Am. Dec. 296. The law does not require a useless act. *McDonald* v. *Wolf*, 40 Mo. App. 308; *Bank* v. *Hagner*, 1 Pet. 467; *Chaney* v. *Libby*, 134 U. S. 81; *Moore* v. *Crawford*, 130 U. S. 142.

As to declarations of devisor and their admissibility, see Moore v. McDonald, 68 Maryland, 321; Griffith v. Diffenderfer, 50 Maryland, 466; Re Goldthrop, 94 Iowa, 336; Harp v. Parr, 16 Illinois, 470; Whitney v. Wheeler, 116 Massachusetts, 490; Taylor v. Pegram, 151 Illinois, 106; Hammond v. Dyke, 42 Minnesota, 272.

Mr. A. S. Worthington, with whom Mr. T. Percy Woodward was on the brief, for defendants in error:

The caveator is to be charged not only with what he actually knew in regard to the physical and mental condition of his grandfather and the alleged undue influence, coercion, misrepresentation and fraud, but with the knowledge he could have acquired by the use of reasonable diligence—especially as to matters concerning which what he did know would have led a man of ordinary prudence to make further inquiry. Upton v. Tribilcock, 91 U. S. 55; Grymes v. Sanders, 93 U. S. 55, 62; Wollensak v. Reiher, 115 U. S. 99, and cases cited.

When laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry. Johnston v. Standard Mining Co., 148 U. S. 360; Johnson v. West India Transit Co., 156 U. S. 618; McLean v. Clapp, 141 U. S. 429. Silence alone of the adverse party will not excuse the plaintiff's laches. Wood v. Carpenter, 101 U. S. 135, 143; Felix v. Patrick, 145 U. S. 317, 331.

Under the circumstances of this case the mere lapse of time has raised an insurmountable obstacle to an attack by the caveator upon his grandfather's will. Hammond v. Hopkins, 143 U. S. 224, 274; Galliher v. Cadwell, 145 U. S. 368; Simmons v. Burlington R. R. Co., 159 U. S. 291; 2 Pomeroy's Eq. Jur. § 965; Fulton v. Moore, 25 Pa. St. 468; Bradfords v. Kents, 43 Pa. St. 474, 483; Baxter v. Bowyer, 19 Ohio St. 490; Wilson v. Wilson, 145 Indiana, 662; Drake v. Wild, 70 Vermont, 52; Hovey v. Hovey, 61 N. H. 599; Well's Estate, 63 Vermont, 116.

This case is governed by the law relating to equitable estoppel, not by the practice or procedure of courts of equity relating to "election;" and ignorance of the law of equitable estoppel is no excuse.

One who takes a benefit under a will is precluded from assailing the instrument as invalid. *Herbert* v. *Wren*, 7 Cranch, 370; *Fisher* v. *Boyce*, 81 Maryland, 46, 52; *Hyde* v. *Baldwin*, 17 Pick. 308; *Smith* v. *Smith*, 14 Gray, 532; *Fry* y. *Morrison*, 159 Illinois, 244; *Drake* v. *Wild*, 70 Vermont, 52; *Williams* v. *Whittell*, 69 App. Div. N. Y. 340, 348; *Bronsan.* v. *Watkins*, 96 Georgia, 54; *Van Duyne* v. *Van Duyne*, 14 N. J. Eq. 49. *Madison* v. *Larmon*, 170 Illinois, 65, 82. See also *Cunningham's Estate*, 137 Pa. St. 621; *Lee* v. *Tower*, 124 N. Y. 370.

As to the effect of the general law of estoppel on one who has accepted benefits under the instrument attacked, see *Dickerson* v. *Colgrove*, 100 U. S. 579; *Kirk* v. *Hamilton*, 102 U. S. 68; *Ferguson* v. *Landram*, 5 Bush, 230; *Van Hook* v. *Whitlock*, 26 Wend. 42; *Daniels* v. *Tearney*, 102 U. S. 415, 421; *Davis* v. *Wakelee*, 156 U. S. 680, 691; *Mex. Nat. Ry. Co.* v. *Davidson*, 157 U. S. 201; *Michels* v. *Olmstead*, 157 U. S. 198; *Neblett* v. *Macfarland*, 92 U. S. 101, distinguished. See 2 Pomeroy Eq. Jur. § 802.

Even if there was fraud the estoppel applies. The doctrine of election relied on by caveator does not apply. *Bank* v. *Morgan*, 117 U. S. 96, 112; *O'Donnell* v. *Clinton*, 145 Massachusetts, 462; 11 Am. & Eng. Ency., 2d ed., 431, and cases cited in note. As to distinction between election and equitable estoppel see *Watson* v. *Watson*, 128 Massachusetts, 152; *Spread* v. *Morgan*, 11 H. L. 587; *Robb* v. *Vos*, 155 U. S. 13, 43; *Thompson* v. *Howard*, 31 Michigan, 309; *Smith* v. *Gilmore*, 7 App. D. C. 192.

Ignorance of law did not relieve caveator from the equitable estoppel resulting from his acts. *Hunt* v. *Rousmaniere*, 1 Pet. 1; *Bank* v. *Daniel*, 12 Pet. 32, 55; 3 Rose's Notes, 702; *Wheeler* v. *Smith*, 9 How. 55, 82; *United States* v. *Hodson*, 10 Wall. 395; *Railroad Co.* v. *Soutter*, 13 Wall. 517, 524; *Hunt* v. *Rousmaniere*,

8 Wheat. 174; *Lamborn* v. *Commissioners*, 97 U. S. 181; *Snell* v. *Insurance Co.*, 98 U. S. 85, 92; *United States* v. *Ames*, 99 U. S. 35; *Laver* v. *Dennett*, 109 U. S. 90; *Griswold* v. *Hazard*, 141 U. S. 260, 284; *Allen* v. *Galloway*, 30 Fed. Rep. 466; *Light* v. *Light*, 21 Pa. St. 407, 412; *Rankin* v. *Mortimere*, 7 Watts, 372; *Cox* v. *Rogers*, 77 Pa. St. 160; *Storrs* v. *Barker*, 6 Johns. Ch. 166; *Whitwell* v. *Winslow*, 134 Massachusetts, 343. See also review of authorities on effect of mistake in law in 55 Am. St. Rep. 494.

Before one who has received a legacy or taken any other benefit under a will can assail the will he must return or tender back that which he has received, as a condition precedent to the institution of any proceedings assailing the will. In this case nothing received by caveator has been returned to anybody, and no tender or offer of any kind was made to the executrix, or other successor, under the will of George W. Utermehle. 1 Bigelow on Fraud, 420; *Talty* v. *Trust Co.*, 93 U. S. 321; *Barbour* v. *Hickey*, 2 App. D. C. 207; 11 Am. & Eng. Ency., 2d ed., 98; *Braham* v. *Burchell*, 3 Addams Ec. R. 243; *Hamblett* v. *Hamblett*, 6 N. H. 333; *Chipman* v. *Montgomery*, 63 N. Y. 223, 234; *Re Peaslee*, 73 Hun, 113; *Miller's Estate*, 159 Pa. St. 562, 574; *S. C.*, 166 Pa. St. 97; *Brown* v. *Appleman*, 83 Mo. App. 29; *Balue* v. *Taylor*, 136 Indiana, 368; 1 Daniel's Ch. Pl., 6th ed., 385. Cases relied on by caveator can be distinguished. As to time when tender should be made see *Howard* v. *Railroad Co.*, 14 App. D. C. 297; *Lyons* v. *A'len*, 11 App. D. C. 543; *Smith* v. *Holyoke*, 112 Massachusetts, 517; *Stone* v. *Cook*, 78 S. W. Rep. 80. The judgment is right on the evidence even if rules of estoppel did not apply.

No evidence was admitted improperly which influenced the jury and no new trial should be granted. *Packet Co.* v. *Clough*, 20 Wall. 528; *Railroad Co.* v. *Smith*, 21 Wall. 255; *United States* v. *Niverson*, 1 Mackey, 152. Testimony as to declarations of testator was properly excluded. *Throckmorton* v. *Holt*, 180 U. S. 552.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

It is true that the plaintiff in error has received out of the estates of his grandfather and grandmother only between the sum of $140,000 and $150,000, while an equal division of the estate of his grandfather, between himself and his aunts, would have given him a much larger sum. What was the reason, if any, for this discrimination, the record does not show.

When the will of his grandfather was read the plaintiff in error was perfectly aware of its contents. He was a young man, nearly twenty-four years of age, married, and there is no proof that he was not of ordinary intelligence and capacity. There is no pretense in the evidence that there was any fraud or misrepresentation connected with obtaining his consent to the probate of the will, without opposition or contest on his part. By his own statement he understood distinctly from one of his aunts, after the reading of the will, that it substantially cut him off; that he would receive under the will a devise of the Young Law Building, worth about $20,000, and a bequest of the note of $750 and accrued interest, amounting to not quite $3,000, and that that was all that was given him under the will. He knew it when the will was read. There is not a particle of evidence that he did not know that, if there had been fraud or undue influence or duress in obtaining the alleged will from his grandfather, or if the latter was without testamentary capacity, such will would be void. The trial court, indeed, observed that he admitted he knew what his legal rights were at the time of the death of his grandfather, if there were no will. He was ignorant only of any evidence on which to base a contest against the proof of the will. He says he did not know at that time that fraud or undue influence or duress had been exercised, in order to obtain the will, nor did he know that his grandfather lacked testamentary capacity to execute a will, but there is no evidence whatever

that any means were used or representation made to prevent him from ascertaining what the facts really were. The reason for his not contesting was, as he said, his reliance on the promise alleged to have been made by or on behalf of his grandmother to make him equal by her own will. On account of this promise he did not contest the will. By reason of his consent, his aunts, the other heirs at law of his grandfather, proceeded to make partition of the real estate given to them by the will, and to use, convey and dispose of it as if it were absolutely their own property. His grandmother received the personal property bequeathed to her by the will and disposed of large amounts of it prior to her death by gifts to charity and otherwise. It would be impossible to place the other heirs in the same position that they were in at the time of the death of the grandfather. The two aunts, if that will had not been proved, would have received their share of the personalty instead of almost the whole of it going to the mother. Under the will, however, the mother took the personalty and spent or disposed of large portions of it, so that she died possessed of only about $200,000, and the two aunts and the plaintiff in error have received an equal share of that sum. The aunts would have received a much larger share of the personalty had it not been for the will of their father. As is stated by the Court of Appeals in the opinion delivered in this case:

"It is impossible to tell from the record before us whether they (the aunts of plaintiff in error) fared any better with the will than they would have fared without it; but it is very evident that by the bequest of the entire personalty by the will to their mother, they lost a valuable interest to which they cannot now be restored. It is impossible to restore the original situation, and the attempt to do so would be to wantonly question titles that have long since accrued, including the very title which the caveator has himself disposed of to the Young Law Building."

Of the witnesses to the grandfather's will, two are dead

and the third paralyzed. From the date of the probate
of the grandfather's will in April, 1889, down to nineteenth
of May, 1900, the plaintiff in error took no steps towards a
contest. On that date he wrote the letters to his aunts,
above referred to, and therein he says that misrepresenta-
tions were made to him as to his rights and interest in the
estate. We find a total absence of all proof as to any such
misrepresentations, either as to his rights or his interest in
the estate of his grandfather. The trial court also found
that the plaintiff in error had not exhibited even reasonable
diligence to learn any facts as to the will of his grandfather,
and that his alleged ignorance of the law was the only ex-
cuse which had the semblance of sufficiency.

We have, therefore, his consent given in April, 1889, to the
probate of the will of his grandfather; his taking the legacy
provided for under that will; his taking possession of the real
estate devised to him by that will; his receipt of its rents and
profits, and his subsequent sale thereof for $20,000, and the
retention of that sum for his own purposes; his consent to the
probate of his grandmother's will, although it clearly does not
fulfill the promise he alleges was made on her behalf after the
death and funeral of his grandfather; no movement is made on
his part or sign of discontent given for about seven years
thereafter, and then he writes letters and files his *caveat* and
proceeds, as already stated. We have the total lack of dili-
gence in the attempt even to ascertain facts. After his grand-
mother's death he says that he was still ignorant of the facts
which he alleges he has since discovered of the existence of
fraud in obtaining the will from his grandfather, and of the
latter's lack of testamentary capacity, and the existence of
duress and undue influence under which the will was obtained;
and he also avers that he was ignorant of the law at the time
that he consented to the probate of his grandfather's will that
he could not take a devise or bequest under that will, and at
the same time seek to prevent its probate or to set it aside as
an invalid instrument. The trial court found that right after

the death of his grandmother he had the advice of counsel, and if he had been ignorant of any rights he would have been informed of the same.

The plaintiff in error asserts that he gave consent to the probate of his grandfather's will because of the promise of his grandmother to rectify by her will the injustice resulting from the will of his grandfather, and when he found that the promise was broken, on reading the will of his grandmother after her decease, he then waited seven years before proceeding to attack the will of his grandfather, admitted to probate in 1889. The Court of Appeals doubted the existence of the promise, and said it was probably only a promise that he should share equally in his grandmother's estate, which his grandmother fully performed. He says that after the death of his grandmother he was very ill for six weeks, and that for two years he was not in good health, and that he remained ignorant of the fraud and undue influence and duress and mental incapacity of his grandfather until a short time before the filing of the *caveat* or the writing of the letters. He does not contend that if these facts existed, he did not know that, if proved, they would avoid the will.

He insists, however, that the law pertaining to the taking of a legacy or devise under a will, which prevents the assertion of the invalidity of the same will, ought not to bind him, because he was ignorant that such was the law; in other words, the law should not cover his case because he was ignorant that it was the law.

We know of no case where mere ignorance of the law, standing alone, constitutes any excuse or defense against its enforcement. It would be impossible to administer the law if ignorance of its provisions were a defense thereto. There are cases, undoubtedly, where ignorance of the law, united with fraudulent conduct on the part of others, or mistakes of fact relating thereto, will be regarded as a defense, but there must be some element, other than a mere mistake of law, which will afford an excuse. In addition there ought to be no negligence

in attempting to discover the facts. The ignorance of the plaintiff in error as to his alleged rights, it would seem, was an ignorance of the existence of alleged facts regarding the procurement of the will of his grandfather, but he does not pretend that, had he known of their existence, he was ignorant of their effect as a ground for refusing probate of the alleged will. The ignorance of evidence to substantiate what he knew were his rights is a very different thing from ignorance of the rights themselves, as is stated so clearly by the Court of Appeals; and. so it appears in this case that the only obstacle to the enforcement of the rule of estoppel rests in the alleged ignorance of the plaintiff in error that such a rule existed. Although his action in consenting to the probate of the will of his grandfather was not the result of fraud or misrepresentation, and the other parties to this litigation cannot be placed back in the position they occupied when the will was admitted to probate, and this condition is the result of the action of the plaintiff in error in consenting to the probate of the will, yet he now contends, notwithstanding all this, that he must be permitted, after the lapse of eleven years, to attempt to defeat the will of his grandfather because he did not know the law applicable to the case in hand. This is a totally inadmissible proposition.

It has been held from the earliest days, in both the Federal and state courts, that a mistake of law, pure and simple, without the addition of any circumstances of fraud or misrepresentation, constitutes no basis for relief at law or in equity, and forms no excuse in favor of the party asserting that he made such mistake. *Hunt* v. *Rousmaniere's Adm.*, 1 Pet. 1, 15; *Bank of the United States* v. *Daniel*, 12 Pet. 32, 55; *United States* v. *Hodson*, 10 Wall. 379, 409; *Lamborn* v. *County Commissioners*, 97 U. S. 181, 185; *Snell* v. *Insurance Co.*, 98 U. S. 85, 90, 92; *Allen* v. *Galloway*, 30 Fed. Rep. 466, where Hammond, J., in reviewing the decisions of this court, says: "Whatever rule may prevail elsewhere, there can be, in the equity courts of the United States, no relief from a mistake of law." *Drake* v. *Wild*, 70 Vermont, 52, 59; in that case the court said

(p. 59): "That ignorance of the law does not excuse a wrong done or a right withheld: That relief from liabilities under the law, arising from a known state of facts, will be denied. But to these general rules there are exceptions, as where there is a mistake of law caused by fraud, imposition or misrepresentation. We think it will be found that in most of the cases cited in these notes, and in Pomeroy, the party seeking relief was led into error by the action of the other party to a transaction, as in contracts and releases." *Light* v. *Light,* 21 Pa. St. 407, 412; *Storrs* v. *Barker,* 6 Johns. Ch. 166; *Whitwell* v. *Winslow,* 134 Massachusetts, 343, 345; *Alabama &c. Railway* v. *Jones,* 73 Mississippi, 110; *S. C.,* 55 Am. St. Rep. 488, note.

Exceptional cases where relief has been given have been, as stated, where there was fraud or imposition upon the individual by the person seeking to avail himself of the contract of the other party. In this case there was, as we have said, neither fraud nor imposition, nor misrepresentation; plaintiff in error was not advised that, although he took under the will, he could attack it. It is a simple, bald case of an alleged mistake or misapprehension, on the part of plaintiff, of what the law was under certain circumstances, with no representation or persuasion on the part of others to cause him to act upon such mistaken assumption.

As to what is the law relating to a party taking the benefit of a provision in his favor under a will, there is really no foundation to dispute the proposition that he thereby is precluded from at the same time attacking the validity of the very instrument under which he received the benefit.

In *Hyde* v. *Baldwin,* 17 Pick. 303, 308, it was held that one who accepted the beneficial interest under a will was thereby barred from setting up any claim which would defeat the full operation of the will. *Drake* v. *Wild,* 70 Vermont, 52, holds the same doctrine. In that case a party was held to be estopped from asserting her title to a trust fund disposed of by the will, because she had accepted the provisions of the will in her own favor. In *Bronsan* v. *Watkins,* 96 Georgia, 54, it

was held that one who took an estate under a will was thereby estopped from at the same time denying its validity as a will, or from questioning the jurisdiction of the court admitting it to probate, or the regularity of the probate proceedings. In *Smith* v. *Smith*, 14 Gray, 532, it was held that the acceptance of a devise estops the devisee to set up a title in opposition to the will, at law as well as in equity. In *Fry* v. *Morrison*, 159 Illinois, 244, it was held that one who took a beneficial interest under a will was thereby estopped to set up any right or claim of his own, though otherwise well founded, which would bar or defeat the effect of any part of the will. And in *Madison* v. *Larmon*, 170 Illinois, 65, 82, it was again held that one who takes under a will cannot contest it as an heir at law of the devised property. So, in *Fisher* v. *Boyce*, 81 Maryland, 46, 53, the court said: "It is a maxim in a court of equity not to permit the same person to hold under and against a will. . . . It is equally appropriate to the jurisdiction and practice of courts of law. If the appellees claim under the will of their father, they must give it effect as far as they can, and they will then be estopped from denying its validity and genuineness. *Waters' Appeal*, 35 Pa. St. 523; *Thrower* v. *Wood*, 53 Georgia, 458."

When in addition to the fact that he took a benefit under the will, a party has acquiesced in its validity for many years, and the opposing party in interest has acted upon such consent and acquiescence, and has so changed his position on that account that he cannot be restored to it, and where witnesses have in the meantime died, the reason for the rule upon which an estoppel is founded is thereby greatly strengthened.

Two cases, among others, were cited by counsel for plaintiff in error, in the court below, and are referred to in the opinion of the Court of Appeals, and they are also cited here for the purpose of showing his right to maintain these proceedings to set aside the will of his grandfather. They are: *Spread* v. *Morgan*, 11 H. L. Cases, 587, decided in 1864; *Watson* v. *Watson*, 128 Massachusetts, 152, decided in 1878.

In the English case it was held that one remaining in possession of two estates, under titles' not consistent with each other, thereby afforded no decisive proof of an election under which title to take.˙ It was there held that the rule was, "that if a party being bound to elect between two properties, not being called upon so to elect, continues in the receipt of the rents and profits of both, such receipt affording no proof of preference, cannot be an election to take the one, and reject the other."

We think the case has no application to the one at bar, and is well distinguished in the opinion of˜the Court of Appeals in this case.

In *Watson* v. *Watson, supra,* the general doctrine that any˜ person taking a beneficial interest under a will, thereby confirmed it and could not set up any right or claim of his own, which would defeat or in any way prevent the full operation of every part of the will, was recognized and affirmed, but it was said (page 155):

"An election made in ignorance of material facts is, of course, not binding, when no other person's rights have been affected thereby. So, if a person, though knowing the facts, has acted in misapprehension of his legal rights, and in ignorance of his obligation to make an election, no intention to elect, and consequently no election, is to be presumed."

Regarding the legatee who took a legacy under the will, the court continued (at p. 157) as follows:

"But as to Edward the case stands differently. Immediately after being informed of the rule of law, little more than a year after the probate of the will, and before the executor had settled any account in the Probate Court, *or the position of any other person had been changed,* he returned his legacy to the executor, and gave him notice that he elected not to take it. He cannot therefore be held to have made such an election as should deprive him of the right under his independent title to partition of the whole estate, not excepting the parcel claimed by respondent."

In this case the position of other parties to this litigation has most materially changed, as has already been shown (the particulars of which need not be repeated), while the plaintiff in error has been also guilty of extreme negligence even in attempting to discover what he alleges are facts. We are satisfied that the plaintiff in error is estopped from now contesting the will, and that great injustice would result from the overturning of the principle adjudged in so many cases.

We are of opinion the case has been rightly decided, and the judgment of the Court of Appeals of the District of Columbia is

*Affirmed.*