## HIXSON et al. v. PATERSON et al.

District Court, N. D. Texas, San Angelo Division.

Dec. 2, 1933.

Collins, Jackson & Snodgrass, of San Angelo, Tex., for complainants.

Scarborough & Ely, of Abilene, Tex., for respondents.

ATWELL, District Judge.

According to the allegations of the bill, Mrs. Margaret A. Shannon died on December 13, 1931. She was the surviving widow of J. M. Shannon, who died on May 27, 1928. The community estate vested in the survivor. At the time of her death the property consisted of diverse and sundry lands, stocks, United States bonds, oil and gas leases, commercial paper, individual promissory notes, real estate and chattel mortgage notes, and other personal properties of the aggregate of between one and two million dollars. These properties were amassed by the Shannons during their residence in and around San Angelo, Tex.

Mrs. Shannon left a will bearing date March 29, 1930, having a codicil dated January 9, 1931, and another dated June 13, 1931. By its terms she set aside $10,000 for the care of the graves of herself and husband, made special bequests to numerous friends, and directed that $50,000 of her estate go to her sister, Mrs. Jura Murray. The death of this sister was the reason for one of the codicils in which she directed that $25,000 of the $50,000 should go to the respondents, who reside in Scotland and New Zealand.

The will then created out of the residue a fund or foundation to be known as the Shannon West Texas Memorial Hospital, to be erected, established, and continued at San Angelo. Executors were named who were to carry out the provisions of the will and who were ultimately to turn over this trust fund to certain named trustees.

On the 28th of December, 1931, this will was probated in the county court of Tom Green county and thereafter the special bequests aggregating many thousands of dollars were paid, and, in the course of administration, state, national, county, and municipal taxes were settled by the executors, the vast properties apportioned as directed, the trust garnered, and the memorial hospital purchased, furnished, and begun capacity functioning.

The respondents were furnished information of the death and copies of the will, in which instrument there was a provision that, "if any legatee named in this will shall file any contest in any court, then in such event such amount as such legatee would receive under this will is not to go to such legatee, but is to become a part of the hospital trust estate hereinbefore created." To each of the two respondents $12,000 was forwarded under the will and the other $500 each was to be remitted as soon as a construction of the will as to payment of taxes was secured from the proper court. The remaining $1,000 is now in court for the respondents.

All of the negotiations between the executors and trustees and the respondents were carried on by correspondence and written instruments between them and their various acting attorneys. There was no personal contact.

When the respondents elected to take under the will, they signed acceptances and confirmed the provisions thereof and executed receipts therefor and approved the action of the executors in probating the will and in paying the legacies. One of the respondents expressed her great pleasure in the knowledge that her aunt had dedicated a large portion of her properties to hospitalization purposes, and requested information along from time to time as to the progress of the venture, and further expressed her pleasure when copies of newspapers were received giving such information.

The properties which came into the hands of the executors demanded constant atten-

tion and frequent change in character and nature and the making of contracts for the development thereof. The estate being so bulky and complex it is necessary that they be unhampered in their right of possession and that their title be unquestioned.

Notwithstanding the acceptance and satisfaction and acquittances of the respondents, and their estoppel to challenge or attack the will or any of the provisions thereof, they are threatening, through correspondence and written communications, to institute legal proceedings for the contest of the will in direct violation of their written contract of confirmation and ratification. That this attitude is in the face of the approval and confirmation theretofore given in the handling, payment, and working with the property under the provisions of the will which included the expenditure of large sums of money in the purchase and acquisition and running of the Shannon West Texas Memorial Hospital.

It is also alleged that in the establishment of this main venture large sums of money have been expended and that it is impossible to keep it as a going institution if the title to the property which is the source of the income therefor, is to be in any way questioned, and that a cloud of that sort results in an immediate injury for which there is no adequate legal remedy.

The pleading is quite long and concludes with a prayer for a restraining order, which shall become perpetual upon final trial, preventing the respondents from instituting or procuring any legal proceedings involving the contest of the Shannon will; also asking for a removal of the cloud upon the title and a judgment quieting their right of possession and title.

A show cause order was issued upon the bill when presented. In obedience to it the respondents' attorneys appeared as friends of the court and moved for a dismissal, suggesting that it was an effort to confirm the probate of a will when the court had no jurisdiction to set the order of probate aside.

█ They maintain that since the national court has no jurisdiction to hear the contest of a will, Sutton v. English, 246 U. S. 199, 38 S. Ct. 254, 62 L. Ed. 664, O'Callaghan v. O'Brien, 199 U. S. 89, 25 S. Ct. 727, 50 L. Ed. 101, it has no power to act in a situation such as is pleaded by the complainants. See, also, Kieley v. McGlynn, 21 Wall. (88 U. S.) 503, 22 L. Ed. 599.

The court, however, at this stage of the proceeding, at any rate, views the application as an action for equitable relief against the breach of a written contract. The respondents seem to have legally bounden themselves to the probate of the will and estopped themselves both by written instrument and by election, acts, and conduct from a contest thereof. Utermehle v. Norment, 197 U. S. 40, 25 S. Ct. 291, 49 L. Ed. 655, 3 Ann. Cas. 520; Smithsonian Institution v. Meech, 169 U. S. 398, 18 S. Ct. 396, 42 L. Ed. 793; Crawford v. Briant (C. C. A.) 53 F.(2d) 754; McWhorter v. Gray (Tex. Civ. App.) 4 S.W.(2d) 302.

The complainants also contend that the executors and trustees are authorized to maintain such a bill both under the statutes and at common law, and that the respondents would be in no position to ask a stay of such a suit until they could contest in the state probate court because the facts pleaded constitute both a legal and an equitable estoppel. Nor would they be entitled to have the proceedings stayed unless they tendered into court the $24,000 already received.

In this connection it may be well to remember that under the laws of Texas a will may be probated any time within four years after the death of the maker, and such limitation does not run against a married woman until after her disability shall have been removed.

█ With this prima facie showing as to legal and equitable rights and without forestalling a decision upon other interesting questions as to the propriety of the remedy being sought by the complainants, it seems to the court that the appropriate thing to do is to grant a temporary injunction so that all parties may be fully heard and the cause speeded to such hearing. The properties and hospital in the meantime being conserved under and by the undisturbed management of the trustees and officers chosen by the deceased.

It is so ordered.