Frank M. Hickok, as Receiver of the Personal Property of Frank H. Cowperthwait, Respondent, *v.* Frank H. Cowperthwait, Frederick S. Cowperthwait, Trustee, and William H. Aymar, Appellant, Impleaded with Others.

Frank M. Hickok, as Receiver of the Personal Property of Frank H. Cowperthwait, Respondent, *v.* Frank H. Cowperthwait, Frederick S. Cowperthwait, Trustee, and Herman Capelle Company, Appellants, Impleaded with Another.

Pledge — when pledgee does not lose his lien on pledged chattels by returning them to pledgor for a special and temporary purpose only.

1. The general rule is that the pledgee of chattels loses his lien by returning them to the pledgor. If the thing, however, is delivered back to the owner for a temporary purpose only, and it is agreed to be redelivered by him, the pledgee may recover it against the owner, if he refuse to restore it to the pledgee, after the purpose is fulfilled.

2. Where a pledgee held stock as collateral and returned it to the pledgor for the special purpose of having it transferred to another on the books of the company, with the understanding that the substituted certificates should, when issued, be delivered to the pledgee, which was done, he having no knowledge of any fraudulent intent on the part of the pledgor, no other lien having attached in the interval, the pledgee did not lose his lien as against the rights of creditors of the pledgor.

*Hickok* v. *Cowperthwait*, 147 App. Div. 121, modified.
*Hickok* v. *Cowperthwait*, 147 App. Div. 900, affirmed.

(Argued December 5, 1913; decided December 30, 1913.)

APPEAL in each of the above-entitled actions from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 2, 1911, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*W. H. Van Benschoten* and *John H. Halpin* for William H. Aymar, appellant. William H. Aymar has a valid lien on sixty shares of the Brooklyn Factory and Power Company, Limited, stock and on fifty shares of the Brooklyn Chair Company stock as security for the unpaid portion of his loan, and was entitled to keep possession of the same until his loan was paid. (*Yates Co. Nat. Bank* v. *Baldwin,* 43 Hun, 136; *Hays* v. *Riddle,* 1 Sandf. 248; *Clark* v. *Costello,* 79 Hun, 588; *White* v. *Platt,* 5 Den. 269; Jones on Pledges & Coll. Security [2d ed.] §§ 44, 45; *Casey* v. *Cavaroc,* 96 U. S. 467; *Comcl. Pub. Co.* v. *Buckwith,* 167 N. Y. 329; *Matter of Kellogg,* 112 Fed. Rep. 52; *Cahn* v. *Ford,* 42 La. Ann. 965; *Fairbanks* v. *Sargent,* 117 N.Y. 320; *Cooper* v. *Roy,* 47 Ill. 53.) The return of the stocks to Aymar was supported by a valuable consideration, and was not voluntary, and Aymar's equity is superior to that of the plaintiff. (*Stanley* v. *Union Bank,* 115 N. Y. 122; *Manchester* v. *Tibbits,* 121 N. Y. 219; *Delaney* v. *Valentine,* 154 N. Y. 692; *Tompkins* v. *Hunter,* 149 N. Y. 117; *Dodge* v. *McKechnie,* 156 N. Y. 514; Code Civ. Pro. § 1405; *Obermeyer* v. *Jung,* 51 App. Div. 247; *Lehrenkrauss* v. *Maires,* 199 N. Y. 240; *Dodge* v. *McKechnie,* 156 N. Y. 514; *Davis* v. *Schwartz,* 155 U. S. 631; *Shotwell* v. *Dixon,* 163 N. Y. 43.) No knowledge of the existence of the plaintiff's claim has been brought home to Aymar, and he cannot be held to have had any knowledge of the alleged fraudulent acts of the Cowperthwaits. (*F. Nat. Bank* v. *Nat.*

*Broadway Bank,* 156 N. Y. 459; *R. & C. T. R. Co.* v. *Paviour,* 164 N. Y. 281; *Ludington* v. *M. Nat. Bank,* 102 App. Div. 251; 182 N. Y. 522; *Squire* v. *Ordemann,* 194 N. Y. 395; *Cohnfield* v. *Tanenbaum,* 176 N. Y. 126; *Suarez* v. *De Montigny,* 1 App. Div. 494; *Kirsch* v. *Tozier,* 143 N. Y. 390; *Wilson* v. *M. E. R. Co.,* 120 N. Y. 145; *Cowing* v. *Altman,* 71 N. Y. 442; *Swan* v. *Produce Bank,* 24 Hun, 277.) Aymar cannot be made chargeable with constructive notice of the alleged fraudulent intent of Frank H. Cowperthwait. (*Sterns* v. *Gage,* 79 N. Y. 102; *Parker* v. *Connor,* 93 N. Y. 118; *Jacobs* v. *Morrison,* 136 N. Y. 101; *Wilson* v. *Marion,* 147 N. Y. 589.) Even if the evidence should be held sufficient to show that the assignment by Frank H. Cowperthwait to Frederick S. Cowperthwait was fraudulent, it should be held that as between the plaintiff and the defendant Aymar the assignment was not fraudulent, and that, therefore, the plaintiff ought not to recover as against the defendant Aymar. (*Lehrenkrauss* v. *Maires,* 199 N. Y. 240; *Shotwell* v. *Dixon,* 163 N. Y. 43; *Tompkins* v. *Hunter,* 149 N. Y. 117.)

*Hector W. Thomas, William D. Hart* and *Lewis Squires* for Frederick S. Cowperthwait, trustees, et al., appellants.

*Samuel Evans Maires* for respondent. The defendant Aymar surrendered and lost his lien upon the stocks returned by him to Frank H. Cowperthwait. (*Casey* v. *Cavaroc,* 96 U. S. 467; *Black* v. *Bogert,* 65 N. Y. 601; *McFarland* v. *Wheeler,* 26 Wend. 466; *Walker* v. *Staples,* 5 Allen, 34; *Kimbel* v. *Hildreth,* 8 Allen, 167; *Thompson* v. *Dolliver,* 132 Mass. 103; *Kellogg* v. *Thomson,* 142 Mass. 76; *Moors* v. *Reading,* 167 Mass. 322; *Wolcott* v. *Keith,* 22 N. H. 196; *Cooley* v. *Minnesota Trans. Co.,* 53 Minn. 327.) The defendant Aymar took the new "trustee" stocks with notice of the fraud of the Cow-

perthwaits rendering void the title of the "trustee" thereto, and has no lien thereon. (*First Nat. Bank* v. *Nat. Broadway Bank,* 156 N. Y. 459; *Gaston* v. *Am. Exch. Nat. Bank,* 29 N. J. Eq. 98; *Ludington* v. *Mercantile Nat. Bank,* 102 App. Div. 251; 182 N. Y. 522; *Ward* v. *City Trust Co.,* 192 N. Y. 61; *Kirsch* v. *Tozier,* 143 N. Y. 390; *Suarez* v. *De Montigny,* 1 App. Div. 494; 153 N. Y. 678; *Gerard* v. *McCormick,* 130 N. Y. 261; *Budd* v. *Monroe,* 18 Hun, 316; *Swan* v. *Produce Bank,* 24 Hun, 277; *White* v. *Price,* 39 Hun, 394; 108 N. Y. 661; *Shaw* v. *Spencer,* 100 Mass. 382.) The defendant Aymar was an actual participator in the fraud of the Cowperthwaits. (*V. Nat. Bank* v. *Newton,* 25 App. Div. 62; *Simons* v. *Goldback,* 56 Hun, 204; 123 N. Y. 637; *Metcalf* v. *Moses,* 161 N. Y. 587; *Galle* v. *Tode,* 148 N. Y. 270; *Starin* v. *Kelly,* 88 N. Y. 418; *Flynn* v. *E. L. Ins. Co.,* 78 N. Y. 568; *Kirby* v. *Tallmadge,* 160 U. S. 379.) The defendant Aymar cannot retain the "trustee" stocks as against the judgment creditors and the plaintiff herein. (*Davis* v. *Leopold,* 87 N. Y. 620; *Hardt* v. *Schwab,* 72 Hun, 109; 150 N. Y. 579; *Levy* v. *Hamilton,* 68 App. Div. 277; *Baldwin* v. *Short,* 125 N. Y. 553.)

Miller, J. These are two judgment creditors' actions tried together to set aside as fraudulent certain transfers of stock by the defendant Frank H. Cowperthwait to his son, the defendant Frederick S. Cowperthwait, as trustee. The trial court found that the transfers were made with the intent and purpose on the part of the Cowperthwaits to hinder, delay and defraud the creditors of Frank. We have reached the conclusion that there was at least some evidence tending to prove the fraudulent intent of both. A serious question arising upon the exclusion of evidence might have been presented by their appeal but for the admissions in their answers.

The alleged fraudulent transfers were made on June

29th, 1904.  At that time the defendant Aymar held as
collateral security for a debt of Frank forty-nine shares
of the common stock of the Brooklyn Chair Company and
thirty shares of the common stock of the Brooklyn Fac-
tory and Power Company.  On May 25th, 1905, Frank
received fifty other shares of the common stock of the
Brooklyn Factory and Power Company, which were no
part of the stocks theretofore transferred by him to his
son, and on that day he transferred and delivered to the
defendant Aymar twenty-five of said shares as additional
collateral security for the payment of his debt.  On the
5th of November, 1906, Aymar returned to Frank the
certificates for the thirty and twenty-five shares respec-
tively of the power company's stock.  Frank caused them
and a certificate for five shares, which stood in the name
of Frederick personally and formed no part of those
fraudulently transferred, to be canceled, and two certifi-
cates for thirty shares each to be issued in the name of
Frederick as trustee.  The substituted certificates were
thereupon delivered to Aymar.  On the 17th of Decem-
ber, 1906, Aymar returned the certificate for the forty-
nine shares of the Brooklyn Chair Company, and Frank
caused it and a certificate for one share belonging to
him, which was no part of the shares fraudulently trans-
ferred, to be canceled and a new certificate for fifty
shares to be issued in the name of Frederick as trustee.
The substituted certificate was, on December 28th, 1906,
delivered to Aymar.  The trial court did not specifically
find for what purpose the certificates were returned by
Aymar to Frank, but the uncontradicted evidence, in
part documentary, establishes the fact to be that they
were returned for the special purpose of having them
transferred on the books of the company to Frederick as
trustee, and with the distinct understanding that the
substituted certificates, with the addition of the one and
five shares respectively, should, when issued, be at once
delivered back to Aymar, as was done.  The trial court

found that, on said November 5th, 1906, and December 28th, 1906, Frank "pledged and lodged with and delivered to" Aymar the said certificates so standing in the name of Frederick as trustee and indorsed by him as trustee in blank, "for the alleged purpose of collaterally securing the payment to said William H. Aymar of an antecedent indebtedness owing by said Frank H. Cowperthwait to said William H. Aymar;" that the original certificates held by Aymar were not surrendered, returned or delivered by him to the defendant Frank "for any special limited or temporary purpose of said William H. Aymar, or for the benefit of said William H. Aymar," but were so surrendered, returned and delivered upon a naked request and solely for the special purpose, use and benefit of Frank; that the substituted certificates were received by Aymar without any inquiry, complaint, objection or demur and were accepted by him "with full knowledge and notice of the fraudulent intent and purpose of the defendant, Frank H. Cowperthwait, and of his said son, the defendant, Frederick S. Cowperthwait, trustee, to hinder, delay and defraud the creditors," etc. There is no evidence whatever to show that Aymar had actual knowledge of the fraudulent intent and purpose of the Cowperthwaits or that he himself had any intent or purpose to defraud the creditors of Frank. That the original pledge to him was beyond attack is conceded.

The judgment against Aymar has thus far been supported on the theory that he lost his lien by the return of the certificates to the Cowperthwaits; that the delivery to him of the substituted certificates with the new shares added constituted a new pledge and that, in accepting it, he was chargeable with knowledge of the fraudulent intent of the Cowperthwaits because it appeared upon the face of the new certificates that they were issued to Frederick as trustee. The general rule, undoubtedly, is that the pledgee of chattels loses his lien by returning them to the pledgor. But that rule has exceptions supported by

authorities which were discussed by Mr. Justice JENKS on the first appeal in the Aymar suit to the Appellate Division. (137 App. Div. 94.) The record on that appeal did not disclose the purpose for which, or the understanding on which, the certificates were returned by Aymar to Frank. In *Casey* v. *Cavaroc* (96 U. S. 467, 478) Mr. Justice BRADLEY said: "If the thing, however, is delivered back to the owner for a temporary purpose only, and it is agreed to be redelivered by him, the pledgee may recover it against the owner, if he refuse to restore it to the pledgee, after the purpose is fulfilled. *Sharratt* v. *Vaughan*, 2 Taunt. 266; Story Bailm. sect. 299. So, if it be delivered back to the owner in a new character; as, for example, as a special bailee or agent. In such case, the pledgee will still be entitled to the pledge, not only as against the owner, but also as against third persons. 14 Pick. 497." If we were to assume that the return of the certificates to the Cowperthwaits was solely for the purposes of the latter and that they were not thereby in any sense constituted the special bailees or agents of Aymar, still the certificates were returned for a temporary purpose only, to be exchanged for substituted certificates which were to be forthwith delivered to Aymar. There can be no doubt but that, as between the parties, Aymar could have compelled the delivery to him of the substituted certificates which represented the identical shares originally pledged and the additional shares. No creditor was harmed by the temporary possession of the Cowperthwaits and, even assuming that Aymar temporarily lost his lien, no other lien attached in the interval.

Moreover, even if the delivery of the substituted certificates to Aymar constituted a new and independent pledge, there is no evidence to impugn it, and the pre-existing indebtedness of Frank constituted ample consideration to support it. (*Lehrenkrauss* v. *Bonnell*, 199 N. Y. 240.) Considering that transaction as wholly independent of the original pledge, Aymar was chargeable with knowl-

edge that the shares belonged to a trust estate, and undoubtedly took them subject to the right both of the trustee and of the *cestuis que trustent* to reclaim possession. But the plaintiff does not represent the latter.

The judgments should be affirmed, with costs as to all of the appellants except the appellant Aymar, and, as to him, the judgment of the Appellate Division and of the Special Term should be reversed and a new trial granted, with costs to abide the event.

CULLEN, Ch. J., HISCOCK, CHASE, COLLIN, CUDDEBACK and HOGAN, JJ., concur.

Judgments accordingly.