## KREIGH, ET AL. v. COGSWELL, ET AL.

(No. 1800; May 2, 1933; 21 Pac. (2d) 831)

For the appellants, there was a brief and an oral argument by *A. C. Allen,* of Riverton, Wyoming.

For the respondent, the cause was submitted on the brief of *G. H. Paul*, of Riverton, Wyoming.

BLUME, Justice.

Action by the plaintiffs for conversion. There was a judgment for the plaintiff, and the defendant appeals.

The evidence discloses, and the court was authorized to find, the following facts:

The plaintiffs are minors, daughters of Claude Kreigh, of the ages of 18, 16 and 10, respectively. The defendant Bertha Cogswell is a creditor of Claude Kreigh, having obtained judgment against him. An execution was issued on this judgment and the defendant Thompson, as sheriff of Fremont County, levied upon certain sheep, fifteen head in all, as the property of the judgment debtor, and sold them in part satisfaction of the judgment. Before the sale a notice was served upon him by the plaintiffs, claiming to be the owners of the property in question. But no attention was paid to the notice. Some of the sheep in question were originally owned by one Davidson and one Todd. These sheep were then young. They were "bum lambs," that is to say, lambs which would not

follow the flock, and hence were presented to the plaintiffs as a gift, and were fed and raised by them. Some of them thereafter had some lambs, and the sheep in question, levied on and sold by the sheriff, were the sheep originally so given to the plaintiffs or the natural increase and increment thereof. The plaintiffs, minors, lived with their father on a farm, and the sheep were brought up within his household and on the property controlled and occupied by him, and the minors had no other property of their own. The father had some of these sheep assessed in his name for taxation in 1930.

Counsel for appellant argues that the minor children acquired the property in question for the benefit of their father, citing as authority the well known principle that ordinarily the earnings of minor children belong to the father. But this is not such a case. No earnings are involved, except incidentally. The question is whether the property, acquired as a gift by the children, belongs to the father. We have not been able to find any cases which so hold. There is authority in Louisiana that the usufruct of such property, which, possibly, would include the lambs from the sheep given to the minors, belongs to the father. 46 C. J. 1316-1317. But that rule has its own, peculiar historical setting. It appears to be derived from the Roman law, through the Code Napoleon. See Darlington v. Turner, 202 U. S. 195, 26 Sup. Ct. 630, 50 L. Ed. 992. Originally, under the Roman law, the oldest male member of an agnatic family, who might be the father, the grandfather, or great-grandfather, had peculiar paternal power *(patria potestas)*. Unless emancipated, the offspring, with some exceptions in the case of married girls, were absolutely under his control, no matter of what age they might be. All property acquired by them in any manner whatever, whether by earnings, by gift or otherwise, was acquired for him. They were incapable of owning any property of their own. This remained the

general rule up to and including the time of Justinian. Some modifications were made therein during the empire, first in favor of soldiers, who were permitted to own property acquired during their time of service, and do with it as they pleased. Inst. 2, 11; 2, 12 pr; C. Just. 12, 36. In 326 A. D. the emperor Constantine directed that palace officials should acquire for their own benefit whatever they might be able to save out of their salaries, or which they should obtain as gratuity from the emperor. C. Just. 12, 30, 1. The same privilege was extended in 444 A. D. to the officials of the praetorian prefects and to shorthand writers and keepers of records. C. Just. 12, 36, 5. Four years previously a like right had been conferred upon the high advocates of the praetorian courts.   C. Just. 2, 7, 8. In 469 A. D. bishops, presbyters and deacons of the church were allowed full control over their clerical income. C. 1, 3, 34. And Justinian gave subdeacons, singers and readers in the church independent ownership over everything they acquired. Nov. 123, 19. He also released bishops from paternal power entirely, and all property acquired from the emperor or the empress were exempted from the general rule. C. 6, 61, 7; Nov. 81. In the meantime some modifications were made in the main rule in favor of children generally. Constantine the Great provided that property acquired by children from their mother should not be acquired for the benefit of the father, except only that he should have a usufruct therein. C. Just. 6, 60, 1. The exception was extended in 379 A. D. to cover property acquired by children through the maternal line generally (C. Th. 8, 18, 6; C. Just. 6, 60, 2) and was further extended to cover property acquired through marriage. C. Just. 6, 61, 4. Finally Justinian (C. Just. 6, 61, 6) provided in 529 A. D.:

"Since it is proper that the interest of fathers as well as of children should be protected, but we find that, under the ancient laws, there are many things that come to

unemancipated children which are not by them acquired for the benefit of the father, as in the case of maternal property and property acquired by or through a marriage, so we shall also introduce a definite rule as to property which unemancipated children receive from other sources. If, therefore, a child in the power of the father, grandfather, or great-grandfather receives any property not originally belonging to the person in whose power he or she may be, but which is received from other sources, as for instance through the bounty of fortune or through his or her own labor, it shall not wholly belong to the parent who has the paternal power, as the law formerly was, but shall belong to such parent only to the extent of the usufruct thereof. Such father, grandfather or great-grandfather shall be entitled to such usufruct, but the fee of the property shall belong to the children just as in the case of property which is derived from a mother or from a spouse.''

The rule as to earnings is not entirely clear under this law, but in any event, the foregoing explains the rule of Louisiana relating to the usufruct in the property of the child.

The common law took a different path from that of the Roman law. Holdsworth (Hist. of Eng. Law. 2, 97) and Pollock and Maitland (Hist. Engl. L. 2, 438) agree that we have no evidence that the Anglo-Saxons knew an institution at all comparable to the paternal power of the Roman law. While the father had control and custody of his minor children, and could even, in case of necessity, sell them when they had not passed the seventh year (Holdsworth, 2, 98), his control ceased when they became of age. Bracton, f 12 b, states that a minor can acquire property, but he makes the consent of a guardian necessary in connection therewith, which seems to hark back to the Roman law, much of which Bracton copied, and the author mentioned such consent, perhaps, in view of the rule existing in full force prior to Justinian, that an acceptance of an inheritance exposed the person ac-

cepting to the danger of the payment of the debts of the inheritance-leaver. Holdsworth (3, 516) makes the unqualified statement that, under the Anglo-Saxon law, "the infant can acquire and own property." He, however, merely cites Pollock and Maitland, and these authorities say (2, 439):

"An infant may well have proprietary rights, even though his father is still alive. Boys and girls often inherit land from their mothers or maternal kinsfolk. In such case the father will usually be holding the land for his life as 'tenant by the law of England,' but the fee will belong to the child. * * * What is more there are cases in which the father will have no right at all in the land that his infant son has inherited; the wardship of that land will belong to some lord."

The authors do not explain the meaning of a tenancy by the law of England, and the first portion of the statement quoted seems to intimate that, perhaps, in certain cases, the father would have the usufruct of the land during his life time. Indeed a statement in Coke on Littleton, 88b, may bear the construction that, while a father would at times be accountable for the profits of the lands held by a minor, he would not be accountable in other cases, the difference, arising out of the difference of the tenure under which the land was held. Mr. Hargrave, in his note to this passage, disputes that it bears this construction and holds that the father was accountable for the profits in all cases. However that may be, subsequent decisions took the view which Mr. Hargrave takes. In Morgan v. Morgan, 1 Atk. 489, 26 Eng. Repr. 310, decided in 1737, the court said that "where a person, whether a father or a stranger, enters upon the estate of an infant, and continues the possession, this court will consider such person as entering as guardian to the infant, and will decree an account against him."

So in Butler v. Butler, 3 Atk. 58, 26 Eng. Repr. 836, decided in 1743, it was held that a father was not entitled to take any part of the personal estate left to a minor, or the accumulations thereof, for the maintenance of the child. This view was upheld in 1746 in the case of Darley v. Darley, 3 Atk. 399, 26 Eng. Repr. 1929, where the court said that "where legacies are given to a child by a relation, a father cannot make use of it in the maintenance of such child, but must provide for him out of his own pocket." See also The King v. Inhabitants of Oakly, 10 East. 491, 103 Eng. Repr. 862. Blackstone in his Commentaries considers the rule well settled and lucidly states (1, 453): "A father has no other power over his son's estate than as his trustee or guardian; for though he may receive the profits during the child's minority, yet he must account for them when he comes of age." To the same effect is Halsbury, Laws of England, 17, 91, 117.

The rule stated by Blackstone is the rule announced in every common-law state in this country which has had occasion to pass upon it. In 46 C. C. 1314 it is said: "As a general rule any property acquired by the child in any way except by its own labor or services belongs to the child, and not to the parent." And a creditor, of course, can have no greater interest therein than a parent. 46 C. J. 1316. It furthermore goes without saying that a parent cannot deprive a child of its property except pursuant to law (31 C. J. 1011), and the fact that in this instance the father had the property in question assessed as his property could not affect the title of the children. In Banks v. Conant, 14 Allen 497, it was said:

"In consideration of the duty which the law imposes on a father to furnish adequate support to his child during infancy, the services of the child during that period are due to the father, and, if they are rendered to a third person, the right of the father to recover the value thereof is clear and indisputable. But this is the extent of the

father's right. He has no title to the property of the child, nor is the capacity or right of the latter to take property or receive money by grant, gift or otherwise, except as a compensation for services, in any degree qualified or limited during minority. Whatever therefore an infant acquires which does not come to him as a compensation for services rendered, belongs absolutely to him, and his father cannot interpose any claim to it, either as against the child, or as against third persons who claim title or possession from or under the infant.''

In Semple School v. Yielding, 16 Ala. App. 584, 80 So. 158, 160 the court said:

''It is also undoubtedly the law that any property acquired by an infant except by its own labor belongs to the infant, as its separate estate, and the parent has no right in such property.''

In Wheeler v. R. Co., 31 Kans. 640, 3 Pac. 297, 300 the court said:

''As a matter of law a minor may own property the same as any other person. He may obtain it by inheritance, by gift, or by purchase; and there is nothing in the law that would prevent even a father from giving property to his minor child. A father may also so emancipate his minor child as to entitle him to receive his own wages. It is probably true that where a minor child lives with his father, and is supported by him, all things given to the child in the way of support, such as clothing, for instance, would still belong to the father and not to the child. But things given by the father to the child, not in the way of support, but with the understanding that they should become the property of the child, would, undoubtedly, become the property of the child.''

It is also held that a father is not entitled to any extraordinary gain of the child, or to profits arising from a sale, or to rents and profits derived from the occupancy of the child's land. Magee v. Magee, 65 Ill. 255; Baker v.

Baker, 41 Vt. 55; McClain v. McClain, 80 Okl. 113, 194 Pac. 894. The same principle would apply to the increase of the sheep which were given to the children in the case at bar, for the profits thus arising may be likened to the rents and profits from land or to the interest derived from money. Moreover, the fact that the sheep were kept on the farm occupied by the children's father and under his control, could not have the effect of transferring ownership to the latter. Notwithstanding that fact, the legal possession of the sheep remained in the children. This point is clearly stated in Fancher v. De Montegre, 1 Head (38 Tenn.) 40, where the court said:

"It is well settled, that in the case of a mixed, or joint possession of land, slaves, or other estate, the law adjudges the possession to be with him who has the superior title. And this rule applies, as strongly in favor of the children, and other members of the father's family, as of strangers. And if they actually reside with him upon the property, it can make no difference that he is the head of the family, claims the estate for himself, and in his own right, and apparently controls it. If he have not the title, and it be in his children, the law fixes the possession with them."

So there was joint possession in the case of McClosky v. Cyphert, 3 Casey (27 Pa.) 220, where the court said:

"The right of an infant to be the owner of property is as clear and as well protected as that of a person who has arrived at full age. When anything is given to an infant to be held by him in his own right, he has the title to it, and the parent, guardian or master has in law no more right to take it (for any purpose beyond safekeeping) than a stranger."

It is true that, ordinarily, the earnings of a minor child, unless waived, belong to the father, and that its labor is to its father's use. Galbraith v. Black, 4 Serg. & R.

(Pa.) 207; 20 R. C. L. 607; 46 C. J. 1285. But the only labor involved in this case is that which the children incidentally bestowed in raising the sheep given them. That labor, even if belonging to the father, and even if he could not waive it or make a gift of it to the children as against creditors, could not, *ipso facto* in any event, change the ownership of the property involved herein. The most that defendant could claim in this case would be that she could in some way, by the establishment of a lien or otherwise, reach and appropriate to her own use the value of this labor and of the benefit bestowed by the father upon the sheep by reason of them being on his farm. We need not decide whether the law would authorize this under the circumstances of this case, for the reason, that there is no evidence that any value, in money, can be attributed thereto.

The judgment of the District Court must, accordingly, be affirmed and it is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.