Argued July 16, affirmed November 25, petition for rehearing
denied December 30, 1970

## ATLANTIC UNION CONFERENCE OF
## SEVENTH-DAY ADVENTISTS, *Respondent, v.*
## WESTERN SAVINGS AND LOAN COMPANY,
*Appellant.*

476 P2d 924

*Jack L. Kennedy*, Portland, argued the cause for appellant. With him on the brief was Gerald R. Pullen.

*Carrell F. Bradley*, Hillsboro, argued the cause for respondent. On the brief were Schwenn, Bradley and Batchelor.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE and HOWELL, Justices.

McALLISTER, J.

This action involves the right to a pledged savings account. The court, after a trial without a jury, found for plaintiff and defendant appeals.

Defendant's only assignment of error is incorrectly stated, but we will consider that it challenges the sufficiency of the evidence to sustain the finding in favor of plaintiff. Since this is a law action we can reverse only if we find that the evidence required the trial court to find in favor of defendant as a matter of law. *State ex rel Salem Pac. v. Combo Constr.*, 254 Or 69, 458 P2d 410 (1969).

Although we decide the case on a narrow issue, the factual background is complex. On August 14, 1961, Personal Investments, Inc., a corporation controlled by Charles Glover, gave his wife Carole I. Glover a promissory note for $220,000, payable in monthly installments of $1,771.32. The note was secured by a trust deed on a 32 unit apartment house under construction near Portland. On March 23, 1962, the completed apartment house was sold for about $323,000 to Dr. Frank T. Wilcox, who assumed and agreed to pay the note.

Thereafter Carole Glover sold the note to the defendant Western Savings and Loan Company pur-

suant to a written agreement dated May 18, 1962. Western thought the value of the property would not justify a loan of more than $165,000, but, nevertheless, agreed to pay Mrs. Glover for the note its face value of $220,000. In order to provide additional security for its loan Western required Mrs. Glover to deposit in an account in her name in Western's Portland Branch $55,000 out of the $220,000 which it paid her for the note. The portion of the May 18, 1962, agreement dealing with the special deposit read as follows:

"Glover shall forthwith establish with Western at its branch in Portland, Oregon, an account in the name of Glover and shall forthwith deposit the sum of Fifty-Five Thousand ($55,000.00) Dollars therein. While said sum, or any part thereof, remains in Western's possession, Western shall also credit said account with such interest as is earned thereon at the current rate as is now or hereafter shall be in effect by Western. Provided, however, except as herein specified, there shall be no withdrawals from said account so long as the unpaid principal balance and interest due on said promissory note of August 14, 1961, shall exceed the sum of One Hundred Sixty-Five Thousand ($165,000.00) Dollars. In the event of default in the payments due on said note dated August 14, 1961, Western, at its option, may withdraw from said account such sum or sums as may be required to place said note on a current basis; and, in such event, Western shall not be required to replace any funds so withdrawn or otherwise be obligated to any person or persons whatsoever for the repayment of all or any part of such withdrawn funds. During all times said account is in existence, the passbook evidencing same shall remain in the possession of Western. When the total balance, both principal and interest due on the said promissory note dated August 14, 1961 shall [not] exceed or be less than One Hundred Sixty-Five Thousand ($165,000.00) Western shall

forthwith release said account and said passbook to Glover or her order."

About two years later Mrs. Glover sold her interest in the pledged savings account to Devon Corporation and shortly thereafter Devon sold the account to plaintiff Atlantic Union Conference of Seventh-Day Adventists. Defendant was notified of these assignments and knew of Atlantic's interest in the account.

In the meantime the apartment house turned out to be a losing investment for Dr. Wilcox. In April 1967 he asked Western to pay the monthly payments from the pledged savings account. Western refused to do so and Dr. Wilcox defaulted on the note. His last payment on the note was made in March 1967.

On May 19, 1967, defendant filed a complaint for judicial foreclosure of the trust deed. On June 29, 1967, a decree was entered ordering the property sold. The published notice fixed the sale for Monday, August 14, 1967, and gave the amount due on the judgment as slightly more than $202,000.

On Friday, August 11th, defendant applied in partial payment of the judgment the full amount on deposit in the pledged savings account, leaving a balance due on the judgment of about $138,000. At the sale on Monday, August 14, 1967, defendant bid in the property for that amount.

Defendant later acknowledged that under the restricted withdrawal agreement it was only entitled to withdraw enough to reduce the balance due to $165,000 and defendant refunded $37,338.62 to Atlantic. Atlantic then brought this action to recover the balance of the pledged account, which then amounted to

$30,056.42. The complaint alleged separately a cause of action in conversion and one for money had and received. The trial judge found for plaintiff on the latter theory.

After discussing at some length what it called "collateral issues" defendant stated the issue on appeal as follows:

> "The only legal issue actually before the court, in spite of all the collateral issues raised at trial, was the interpretation of the language in the agreement entered into between Carole Glover and defendant on May 18, 1962. More specifically, did the * * * language allow the defendant to appropriate the Glover account when payments on the promissory note referred to in the agreement were not only in default, but completely abandoned by the payor Doctor Wilcox: * * *."

■ Plaintiff, although raising other issues, rests its case in a large measure on the construction of the pledge agreement. Plaintiff contends that defendant could use the account only to keep the note on a current basis and that any other use constituted a wrongful conversion of the pledged account.

Although the question is not free from doubt, we are inclined to the view that the pledge agreement did not authorize defendant to accelerate the note and then withdraw either the full amount of the pledge or enough to reduce the balance due on the note to $165,000. Neither withdrawal would place the note on a current basis. After acceleration the note could be placed on a current basis only by payment in full.

Under the pledge agreement the right to withdraw arises only in the event of default in the "payments due on said note" and, in such event, the with-

drawals are restricted to such sum or sums as "may be required to place said note on a current basis." The agreement, by using the plural of "payments", "sums" required, and "withdrawn funds" appears to contemplate the possibility of recurring defaults and recurring withdrawals. The agreement certainly does not provide expressly for the withdrawal of the entire pledged account in the event the note is accelerated and the full balance thereof becomes due and payable. Neither does it provide expressly for a lump sum withdrawal sufficient to reduce the balance on the note after acceleration to $165,000. Such express authority is usually found in a pledge agreement of the kind involved here, but, for some reason, it was omitted from this agreement. We have no right to provide such authority by a strained construction of the agreement.

■ The agreement covering the purchase by Western of the Glover note and the creation of the pledged savings account comprised three and one-half typewritten pages of carefully worded provisions. A careful reading of the instrument indicates that the parties intended Western to have only the somewhat limited power to use the pledged account as is expressed in the agreement. If they had intended otherwise it would have been so easy to say so. A pledge agreement must be strictly construed.[1] This agreement was drawn by the defendant and since, at best, it is ambiguous it must be construed in favor of plaintiff.[2]

---

[1] Rocco v. Peoples Nat. Bank of Ellwood, 150 Pa Super 348, 28 A2d 363, 364 (1942).

[2] This familiar rule of contract construction has often been applied to pledge agreements. See, e.g., Perron v. First Nat. Bank, 289 Mich 629, 286 NW 859 (1939); Gillet v. Bank of America, 160 NY 549, 55 NE 292 (1899); Heimpel v. First Nat. Bank & Trust Co., 337 Pa 425, 12 A2d 28 (1940).

In view of our construction of the agreement we agree with the result reached by the trial court and affirm its judgment.

O'CONNELL, C.J., dissents.