Michael Ross WIGHTMAN and Erin Jennell Wightman By and Through their next friends Howard Wightman and Evelyn Wightman, Appellants (Plaintiffs below),

v.

AMERICAN NATIONAL BANK OF RIVERTON, Appellee (Defendant and Third Party Plaintiff below),

v.

William MALODY, Jr., a/k/a William M. Malody and John R. Benesch, as Administrator of the Estate of Page Malody, deceased, Third Party Defendants.*

No. 4949.

Supreme Court of Wyoming.

March 13, 1979.

Rehearing Granted June 12, 1979.

* Not parties to this appeal.

Tom C. Toner, Rodle, Yonkee & Arney, Sheridan, for appellants.

Donald P. White, White, Avery & Howard, Riverton, for appellee.

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.**

RAPER, Chief Justice.

This case involves rights to a pledged certificate of deposit (C.D.). A motion for summary judgment was granted in favor of defendant-appellee, American National Bank of Riverton (ANB). Plaintiffs-appellants appeal. The district court found that the C.D., in the names of "Page Malody or Michael Ross Malody or Erin Jennell Malody"[1] as depositors, pledged by Page Malody to secure a joint indebtedness of William and Page Malody, husband and wife, was upon default properly applied by ANB to that debt. The district court also found that while the C.D. stood in the three names shown, ANB's rights upon default were not affected even though Page Malody died before the debt matured. The issues, as stated by the appellants, assert that:

"1. The purchase of the certificate of deposit vested in the children a joint interest in the certificate of deposit with a right of survivorship.

"2. There is evidence from which the jury could find that Page Malody intended to vest a present interest in the certificate of deposit in her children and grant them rights of survivorship in the certificate of deposit.

"3. Page Malody's interest in the certificate of deposit terminated on her death. The note which the collateral agreement was to secure was not due until after her death. The Bank's lien or set-off necessarily terminated on Page Malody's

death. The execution of the collateral agreement is not inconsistent with an intent to vest the children with a present beneficial interest in the certificate of deposit."

We will reverse the summary judgment for ANB and remand with directions to enter summary judgment for appellants.

Although we decide the case on relatively simple legal principles and on a narrow issue, the factual background is somewhat involved. Page and William Malody were married January 1, 1971, a second marriage for each. In 1970, Page's grandfather had died and left her a one-half interest in a Nebraska ranch, in trust until she reached age 30.

In October, 1973, the Malodys met with the Executive Vice-President of ANB and discussed with him their intent to purchase a ranch in the Lander area. At that time Page deposited $75,000 from her inheritance to be used as a down payment on the ranch. The Malodys also wished to obtain a line of credit from ANB to purchase livestock and farm machinery. A financing statement, given to the bank at that time, noted Page's expectancy in the Nebraska ranch upon which ANB relied as a consideration in granting loans to the Malodys. In January, 1974, ANB began advancing money to the Malodys. In this same month, Page had a malignant cyst removed from her leg.

In the early spring of 1974, Page received treatment for cancer in Salt Lake City, Utah. At about that same time, arrangements were being made to sell the Nebraska ranch. While in Nebraska and after learning she had cancer, Page consulted with an attorney about establishing a trust for the children with the proceeds of the inheritance. Page had an agreement with

---

** At the time of oral argument, Guthrie, J., was Chief Justice. He retired from the court on December 31, 1978. By order of the court, entered on January 1, 1979, he has been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5-1-106(f), W.S.1977, and has continued to participate in the decision and opinion of the court in this case.

1. These children were the offspring of an earlier marriage of Page Malody. They were never adopted by William Malody and never formally took his name, but during the marriage of Page and William Malody they used his name in their day-to-day lives.

William Malody that her children would inherit her property and William's children by a former marriage would inherit only his property. Page continued to receive radium treatments for cancer until, in August, 1974, she was told her cancer had been cured.

In October, 1974, the Nebraska ranch was sold and Page received $182,300 which she deposited in a savings account at ANB. A few days later she withdrew $150,000 and purchased a C.D. in her name alone. On November 29, 1974, the Malodys reduced their loans, apparently at least in part with funds also withdrawn from the $182,300 savings deposit, and consolidated several loans as well. They executed a promissory note to ANB dated November 29, 1974, in the amount of $154,775, payable December 15, 1975. At this same time they executed a security agreement covering the cattle and machinery purchased with the loans from ANB.[2] At ANB's request, Page Malody pledged the C.D. in her name alone as depositor as additional security for the loan.

In 1975, Page Malody's cancer symptoms recurred. ANB officials were aware of her illness in 1974 and that it was cancerous in January, 1975. The C.D. which had been purchased in October, 1974, matured on March 1, 1975. Upon reissuance, and at Page's request, a new C.D. in the sum of $154,875 named "Page Malody, or Michael Ross Malody or Erin Jennell Malody," as depositors. ANB did not question the use of alternative payees either upon reissuance of the C.D. or when a new pledge agreement was signed by Page. The pledge agreement contains no provisions regarding the alternative payees but appears to be a form agreement prepared by ANB with a blank space for description of the pledged property. The reissued C.D. had a maturity date of September 1, 1975, but by its printed terms was "automatically renewable." Page Malody died in October, 1975. When the promissory note came due on December 15, 1975, William Malody defaulted and

ANB applied the C.D. to the indebtedness. This application of the pledged property to the indebtedness was termed by ANB as a "set-off".

When Page died, Howard and Evelyn Wightman, grandparents of Page's children, asked the President of ANB to serve as administrator of Page's estate. He assured them he would attend to the children's interests but did not advise them that the children's names were on the C.D. It became apparent that without the C.D. there was only $7,000—$9,000 in Page's estate. The ranch, all cattle and machinery had passed to William Malody because it was held jointly as husband and wife with the right of survivorship. Eventually all the cattle and machinery were sold and used to apply to a deficiency in the original indebtedness as well as to the indebtedness incurred by William Malody after Page's death. Since the indebtedness was still not extinguished, ANB received a second mortgage on the ranch itself in September, 1976. When Howard and Evelyn Wightman learned that the names of Page's children were on the C.D., the present action was brought to recover its face amount with interest at its stated rate for the children.

The simple question we have to answer is what interest in the C.D. did Page Malody pledge to the bank on March 1, 1975. Generally speaking, a bank deposit is in the nature of a contract and is owned by the depositor or depositors, or is payable to the person to whose order the deposit is subject, whose rights thereto the bank may not dispute. 10 Am.Jur.2d Banks § 345, pp. 308–309. The bank holds the deposit in a debtor-creditor relationship with the depositor, and is subject to be paid out upon the direction of the creditor according to the terms and conditions imposed by him. 10 Am.Jur.2d Banks § 339, pp. 301–304. As between the depositor and the bank, the deposit agreement is conclusive. *O'Hair v. O'Hair*, 1973, 109 Ariz. 236, 508 P.2d 66, 68.

---

2. These loans were made at 100% of the value—an unusual thing according to ANB officers. Such loans are usually made only at 66% of value. At least 33 of the cattle purchased were mortgaged to the F.H.A. and ended up being worthless. The cattle market deteriorated in 1975 and cattle which had been purchased for $450 became worth only $250.

In the case at bar, Page purchased the certificate of deposit in her own name and in the names of her two children, in the alternative. It is established by statute in this state that, as between a depositor and a bank, a deposit standing in the names of two or more persons in the alternative belongs wholly to the survivor or survivors upon the death of one depositor. § 13–29.1, W.S.1957[3] (as amended in 1977, after the events of this case took place, this statute is now § 13–3–601(b), W.S.1977); § 34–1–140, W.S.1977; §§ 34–21–310 and 34–21–316, W.S.1977 (see official comments in Uniform Laws Annotated, Uniform Commercial Code, Vol. 2, §§ 3–110 and 3–116). We hold that the C.D. purchased by Page Malody on March 1, 1975, was held in joint tenancy and upon the death of any of the persons named therein the survivors would thereupon own the entire value of the C.D.[4]

On March 1, 1975, Page Malody also pledged the C.D. as additional security for loans made by ANB to her and her husband. The document which Page signed was a pledge agreement:

" * * * the undersigned has *pledged,* transferred and delivered to said Bank the following property, viz.: Security Agreement and Certificate of Deposit # A–1053 in the amount of $154,875.00." (Emphasis added.)

In addition to the use of the word "pledge", the transaction bears all the characteristics of a pledge: property held by the creditor, as security for payment of a debt, the property being redeemable on specified terms and subject to sale in the event of default. 68 Am.Jur.2d Secured Transactions § 50, pp. 876–878; 72 C.J.S. Pledges §§ 1, 5, and 11; and see, *Walton v. Piqua State Bank,* 1970, 204 Kan. 741, 466 P.2d 316, 326–329. A pledge is recognized by the Uniform Commercial Code (U.C.C.).[5] However, the U.C.C. does not deal with the rights and obligations arising out of pledges. Common law principles are used to fill this gap.[6] 68 Am.Jur.2d Secured Transactions § 49, pp. 875–876. While the U.C.C. recognizes pledges, it does not specifically deal with the rights and obligations arising out of them. Moreover, § 34–21–904(a)(xi) specifically excludes the pledge of a savings deposit. Thus we are obliged to peruse the law of pledges in determining the matter before us. We hold that the agreement between ANB and Page Malody was a pledge and the law governing pledges is the proper frame of reference in this case.

At the time Page Malody pledged the C.D., she had only an interest that was subject to being terminated upon her death and which was virtually the equivalent of a

---

3. § 13–29.1 W.S.1957, 1975 Cum.Supp. (§ 1, Ch. 156, S.L.Wyo.1963, § 1, Ch. 14, S.L.Wyo. 1969):

"When a deposit has been made or shall hereafter be made in any bank in this state, in the names of two persons who are husband and wife, and when a deposit has been made or shall hereafter be made in the names of two or more persons payable to either, or to one or any of them, or payable to either or one or more or to the survivor of them, such deposits, or any part thereof, or interest or dividends thereon or additions thereto, may be paid to either or any of said persons, whether or not the other or others be living, and the receipt of the payment by the person or persons so paid shall be a valid and sufficient release and discharge to the bank for any payment so made."

Enacted after this court's decision in *Wambeke v. Hopkin,* Wyo.1962, 372 P.2d 470, cited by ANB.

4. We emphasize here that this is conclusive only between ANB, which is not a stranger to

the deposit contract, and the depositors. Frequently such deposits are subject to challenge on a variety of legal grounds and the intention of the parties is the controlling factor. See, Anno., 43 A.L.R.3d 971 (1972). We make no attempt to determine the interests of Michael Ross Malody and Erin Jennell Malody as between them.

5. § 34–21–902(b), W.S.1977 (see U.C.C. § 9–102(2)):

"(b) This article applies to security interests created by contract including pledge, * * *."

6. § 34–21–103, W.S.1977 (see U.C.C. § 1–103):

"Unless displaced by the particular provisions of this act * * *, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

life estate. See, Anno., 43 A.L.R.3d 971, Joint Savings Account–Gift to Survivor, §§ 8, 9 and 10, pp. 1007–1014 (see footnotes 1 and 2 on p. 1007, and footnote 8, p. 1013). ANB may not argue, as it appears to do, that they were duped into this transaction and did not know its legal consequences. ANB, as is true of all others, is charged with knowledge of prevailing law which enters into and becomes a part of contracts as though expressly referred to and incorporated in their terms. *Tri-County Electric Association, Inc. v. City of Gillette,* Wyo. 1978, 584 P.2d 995, 1007; *Utermehle v. Norment,* 1905, 197 U.S. 40, 55–56, 25 S.Ct. 291, 296, 49 L.Ed. 655, 661–662. Moreover, it is evident from the record that this is the treatment given to bank deposits held jointly by alternate payees. By issuing the C.D., ANB agreed to pay any of the depositors or the survivors in case of death of one. A parent may make a gift *inter vivos* to his child. 59 Am.Jur.2d Parent and Child § 141, p. 241. As between ANB and Page Malody that was the effect of the joint deposit and the children had a vested property right in the C.D. A parent has no authority to sell, pledge, or transfer his child's property. 59 Am.Jur.2d Parent and Child § 48, p. 135. *Kreigh v. Cogswell,* 1933, 45 Wyo. 531, 21 P.2d 831.

■ It is a fundamental principle of the law of pledges, and one that is generally recognized throughout the law of both real and personal property, that a debtor may pledge any interest which he has in property, but cannot pledge any greater right or interest than he himself has. 72 C.J.S. Pledges § 8 (also § 21c). In addition, in the absence of an agreement to the contrary, the pledge will apply only to the interest which the pledgor owns in the property at the time of the pledge. And a pledgee who has either actual or constructive notice of outstanding rights or equities affecting the pledged property takes the property subject to those outstanding rights and equities. 72 C.J.S. Pledges § 26d.[7]

The pledge agreement does not purport to pledge anything more than Page Malody's interest in the C.D. There is no mention of her children's interests. The pledge agreement is a form contract drawn up by ANB to protect its interests and it must be strictly construed against them. *Atlantic Union Conference of Seventh-Day Adventists v. Western Savings & Loan Co.,* 1970, 257 Or. 266, 476 P.2d 924. It is a well-known principle of contract law that a contract will be construed against its maker. *Reed v. Wadsworth,* Wyo.1976, 553 P.2d 1024; *McGinnis v. General Petroleum Corp.,* Wyo. 1963, 385 P.2d 198. This is especially so where the contract is a form contract and where the bargaining power of the parties is as lopsided as it is here. *Goodman v. Kelly,* Wyo.1964, 390 P.2d 244. If ANB felt insecure because of the security interest it received in this transaction, it had many alternative remedies available to it, and this court will not supply one *ex post facto.* We hold that Page Malody pledged only her life estate interest in the C.D. When she died in October, 1975, her interest in the C.D. was extinguished and became the property of her children, appellants. Page's death also extinguished the encumbrance on her life estate interest created by the pledge agreement.

As just discussed, Page Malody could pledge no greater right or title than she herself had. The fact that ANB had possession of the C.D. does not denigrate the rights of the other depositors whose names appeared on the C.D; Page Malody pledged her interest in the C.D. to ANB. Possession of the pledged property is one of the requirements of a pledge, and

"[b]y the contract of pledge, the pledgor does not part with his general right of property in the collateral. The general property therein remains in him, and only a special property vests in the pledgee. *The pledgee does not acquire an interest in the property, except as a security for*

---

7. Peripheral mention of fraud was made in this case. We cannot conceive of a more aboveboard transaction than that which took place here. The district court saw no fraud and stated he would "not infer perfidy". We would add that there is nothing from which perfidy may be inferred.

*his debt.* * * *" 68 Am.Jur.2d Secured Transaction, § 62, p. 893. (Emphasis added and footnotes omitted.)

Thus, during the time the C.D. was pledged, ANB did have a special property right in the C.D. But that special property right obviously could not exceed the property right of Page Malody. ANB's right to possession was terminated by Page's death, just as Page Malody's interest in the C.D. was terminated at her death. The children, as true owners upon Page's death, are entitled to follow and reclaim the property or recover the value thereof. 68 Am.Jur.2d Secured Transactions § 57, pp. 884–885. An analogous concept is found in § 35(a), Restatement of the Law, Security:

"§ 35. Priorities of Pledgee and Third Persons.

"The priorities of the pledgee and third persons having an interest in the pledged chattel are determined by the following rules:

"(a) any person having an antecedent legal interest in a non-negotiable pledged chattel, who has given the pledgor no power to pledge, has priority over the pledgee;

* * *"

The C.D. on its face declares it to be "non-negotiable."

It is not clear from the record, or the district court's comments in granting the summary judgment, exactly what legal principles were relied upon in deciding the motion for summary judgment. Apparently the district court decided that the reissued C.D. came into being burdened by all previous dealings between ANB and Page Malody. We know of no legal principle which supports such a decision and none is pointed out to us. The record reveals that Page executed a new agreement on March 1, 1975, which took the place of the preceding agreement. After March 1, 1975, this was the only agreement existing between the parties and is the only agreement on which ANB, or Page Malody and her cotenants, may rely. At the time the C.D. was reissued, ANB "asked no questions and was told no lies." Page simply asked to have three names placed on the C.D. and ANB obliged. We can only conclude that ANB was satisfied with the interest it received. It relied upon the pledge agreement but called what it did a "set-off". Upon her death, Page Malody no longer existed, her personal representative was bypassed, her dominion over the account ended; there was nothing to set-off. 68 A.L.R.3d 192, § 5(c), pp. 202–203, which concept we approve.

This case comes to us on a motion for summary judgment in favor of ANB. The propriety of granting a summary judgment depends on the correctness of the court's dual findings that there is no genuine issues as to any material fact and that the prevailing party is entitled to judgment as a matter of law. *Johnson v. Soulis,* Wyo.1975, 542 P.2d 867. The material facts in this case are uncontroverted: the C.D. listing three alternate payees, the pledge agreement which pledged only Page Malody's interest in the C.D., and the fact that Page Malody died before the debt, which was secured in part by the C.D., was in default. The district court incorrectly determined that ANB was entitled to judgment as a matter of law. A trial court may resolve a motion for summary judgment in favor of either party, even though only one has filed such a motion. *Morrow v. Diefenderfer,* Wyo.1963, 384 P.2d 601, 604; *Summerlin v. Robinson Transportation Company,* Wyo. 1967, 427 P.2d 859, 860. In view of the undisputed facts and the status of the law applicable in this case the district court would have been justified in entering summary judgment for plaintiffs. We treat a motion for summary judgment as though originally before us for disposition. *Seay v. Vialpando,* Wyo.1977, 567 P.2d 285. From the record it is readily apparent that all pertinent facts necessary to a sound judicial determination are before the court and further proceedings in the lower court would be futile.

Reversed and remanded to the district court with directions to vacate its summary judgment and enter judgment for plaintiffs-appellants for the amount of the C.D.

and accrued interest in accordance with its tenor.

THOMAS, Justice, dissenting, with whom McCLINTOCK, Justice, joins.

I am persuaded that the judgment of the district court in this instance should be affirmed. I therefore dissent from the majority opinion in this case.

The disposition made in the majority opinion assumes that the American National Bank must found any rights it has upon the pledge of the new certificate of deposit issued in the names of Page Malody and her children on March 1, 1975. This assumption in turn rests upon an assumption that the security interest of the bank in the first certificate of deposit was terminated when that instrument was made available to Page Malody to be exchanged for the March 1, 1975, certificate of deposit. The result reached in the majority opinion appears to attach significance to the fact that the pledgee and the depository bank were the same entity. I submit that in order to correctly analyze and apply the law the American National Bank in its role as pledgee should be treated as a stranger to the contract of deposit. A pledgee of a certificate of deposit will not always be able to control the circumstance surrounding its collection and the substitution of a new certificate as the majority opinion suggests.

I do not find the disposition made in the majority opinion to be in accordance with settled rules of law. The correct rule applicable to this situation is succinctly stated in the Restatement of the Law of Security, § 11, p. 38 (A.L.I. 1941) as follows:

"* * * A pledge is not terminated by delivery of the chattel to the pledgor for a temporary and limited purpose relating to the maintenance of the value of the pledgee's interest and having to do with the protection, improvement or sale of the chattel, or where the chattel is an instrument or document, its handling or collection."

*Clark v. Iselin,* 21 Wall. (88 U.S.) 360, 22 L.Ed. 568 (1874); *Merchants Collection Agency, Ltd., v. Mitchell,* 32 Haw. 343 (1932); *Hoerner v. First National Bank of Jackson,* Miss., 254 So.2d 754 (1971); *White*

*v. Platt,* 5 Denio 269 (N.Y. 1848); *Hickok v. Cowperthwait,* 210 N.Y. 137, 103 N.E. 1111 (1913); and *Bundy v. Commercial Credit Co.,* 202 N.C. 604, 163 S.E. 676 (1932). See *Manufacturers Acceptance Corporation v. Hale,* 65 F.2d 76 (6th Cir. 1933); *Foote v. Sun Life Assur. Co. of Canada,* 173 So. 477 (La.App.1937); and *Howick v. Bank of Salt Lake,* 28 Utah 2d 64, 498 P.2d 352 (1972). A similar statement of the rule is found in 72 C.J.S. Pledges § 27f, p. 40 (1951), where the following language appears at p. 41:

"* * * A redelivery by the pledgee of collateral security to the pledgor for collection only ordinarily does not divest the pledgee's lien as against the pledgor. * * *"

The same rule is found in 68 Am.Jur.2d, Secured Transactions, § 79, p. 908 (1973).

The application of this concept in situations involving third parties is explained in Restatement of the Law of Security, § 16, p. 62 (A.L.I. 1941) where the following rule appears:

"Where the pledgor transfers a pledged chattel to a third person, the transferee acquires the pledgor's interest in the chattel but the transferee's interest is subject to the interest of the pledgee unless the transferee is a

"(a) bona fide purchaser from a pledgor who is in possession with the consent of the pledgee and the purchaser has relied upon the pledgor's possession, or

"(b) holder in due course of a negotiable instrument."

The comments in the Restatement of the Law of Security in connection with the above-quoted rules demonstrate that they govern the facts in this case. One must start with the valid security interest of the bank in the first certificate of deposit which was pledged. The adoption of a rule which requires the bank under these circumstances to refuse to permit the pledgor to present the certificate of deposit for collection once it had matured and no longer was drawing interest creates an unnecessary burden upon the rights and relationship of these parties. Quite likely such refusal would constitute a violation of a duty owed by the bank to its pledgor. See Restate-

ment of the Law of Security, § 18, p. 66 (A.L.I. 1941). What really occurred in this instance, however, is that the American National Bank delivered the first certificate of deposit to Page Malody upon its maturity for the temporary and limited purpose of exchanging it for another certificate of deposit to be substituted as collateral under the pledge. The law of pledges contemplates such a substitution. Restatement of the Law of Security, § 40, p. 122 (A.L.I. 1941).

It follows that the transfer of an interest to Page Malody's children, however it may be described, was subject to the pledge to the American National Bank. These children, whom I would identify as third-party beneficiaries of a contract of deposit between Page Malody and the American National Bank, hardly could qualify as bona fide purchasers in the context of this rule.

Only two possible grounds to reverse the trial court appear in this instance. The first would be that there exists an issue of material fact relative to the intention of the parties. If the parties could be found to have intended some different result from that dictated by the foregoing authorities then effect should be given to their intention. My examination of the record persuades me that reasonable men could not differ as to the intention of the parties that the first certificate of deposit was to be made available to Page Malody only for the special and limited purpose of converting it into the second certificate of deposit to be substituted as security with the American National Bank. Consequently I would not remand for trial for that reason.

A suggestion is found in the argument of the appellant that the American National Bank chose to set off the funds represented by the certificate of deposit against its debt rather than to foreclose its security interest in the pledged collateral. There does appear in the record a letter from the bank to Page Malody's husband so stating. However, there also appears testimony of bank officers by deposition which for me sufficiently clarifies that factual situation as to make it unreasonable to conclude that there would be a genuine issue of fact as to whether the American National Bank exercised its remedy of setoff or its remedy of foreclosing its pledge. It exercised the remedy of foreclosure.

Lastly, I must dispose of one incidental matter. I agree that the Uniform Commercial Code as adopted in Wyoming does not pertain to the factual situation presented in this case because of the provisions of § 34–21–904(a)(xi), W.S.1977. In my view, however, the following statement appearing in the majority opinion does not accurately state the law:

"However, the U.C.C. does not deal with the rights and obligations arising out of pledges. Common law principles are used to fill this gap. 68 Am.Jur.2d Secured Transactions § 49, pp. 875–876." (Footnotes omitted.)

Perusal of 68 Am.Jur.2d, Secured Transactions, § 49, p. 875 (1973), discloses the following language at the very beginning of the section:

"Article 9 of the Uniform Commercial Code applies to security interests created by pledge * * *."

The same conclusion is to be drawn from the portion of our statute, § 34–21–902(b), W.S.1977, quoted at footnote 5 in the majority opinion. Succinctly, it is my view that one can create and perfect a security interest by placing possession of the collateral in the hands of the secured party. This is a pledge, and the rights of the parties then are to be governed by Article 9 of the Uniform Commercial Code as adopted in Wyoming.

### ORDER GRANTING REHEARING

After consideration of appellee's Petition for Rehearing, by the decision of a majority of the court, pursuant to Rule 8, W.R.A.P., it is

ORDERED that rehearing be and is granted and that appellant's answer is provided by Rule 8.03, W.R.A.P.