*134 ORDER (Final Judgment)
TODD R. MATHA,* Chief Judge.
INTRODUCTION
The Court must determine whether to uphold the adjudicative decision on remand of the Ho-Chunk Nation Tribal Employment Rights Ordinance Commission (hereinafter Commission). The Court upholds the findings of the Commission on all relevant points. The analysis and holding of the Court follows below.
PROCEDURAL HISTORY
The Court recounts the procedural history in significant detail within a previous judgment. Order (Reversing & Remanding), CV 04-06-07 (HCN Tr. Ct., Feb. 7, 2006). For purposes of this decision, the Court notes that the Commission issued its *135 Reverse & Remand Order on April 27, 2006. The petitioner, Patricia A. Lowe-Ennis, by and through Attorney Mark L. Goodman, filed her Notice of Appeal on May 26, 2006. See Tribal Employment Rights Ordinance (hereinafter TERO or Ordinance), ART. XXV, § 2(a); see also Ho-Chunk Nation Rules of Civil Procedure (hereinafter HCN R. Civ. P.), Rule 63(A)(1)(c).
On May 26, 2006, the Court entered the Scheduling Order, setting forth the time-lines and procedures to which the parties should adhere during the pendency of the appeal. The petitioner subsequently filed her Brief of Petitioner on June 26, 2006. See HCN R. Civ. P. 63(E). The respondent, Cash Systems, Inc. (hereinafter CSI), by and through Attorney Colette R. Routel, filed a timely Brief of Respondent on July 25, 2006. Id, The parties strictly adhered to the briefing schedule.
On November 8, 2006, the Court issued an Order (Requiring Joinder of Party), joining the Commission i n the suit, due to the petitioner’s failure to list the Commission as a party. On December 1, 2006, the petitioner filed an Amended Complaint with the Court. The Commission, by and through Attorney Michael P. Murphy, submitted a request for an extension of time to file on December 11, 2006; then filed its Response on December 13, 2006. The petitioner filed her Reply to the Commission’s Response on December 26, 2006.
The Court, in its discretion, issued Notice(-s) of Hearing on January 25, 2007, informing the parties of the date, time and location of the Oral Argument Hearing. Id. The Court convened the Hearing on February 21, 2007 at 1:00 p.m. CST. The following parties appeared at the Oral Argument Hearing: Attorney Mark L, Goodman,’‘'petitioner’s counsel; Attorney Colette R.QVHO Routel, counsel for CSI; and Attorney Michael P. Murphy, counsel for the Commission.
APPLICABLE LAW
CONSTITUTION OF THE HO-CHUNK NATION
Art X Bill of Rights
(a) The Ho-Chunk Nation, in exercising its powers of self-government, shall not:
(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without the due process of law;
HO-CHUNK NATION PERSONNEL POLICIES AND PROCEDURES (am. Feb.19, 2003)
Introduction—General Purposes [p. 2]
These policies are issued as the official directive of the obligations of the Ho-Chunk Nation and the employees to each other and to the public. They are to ensure consistent personnel practices designed to utilize to [sic ] the human resources of the Nation in the achievement of the desired goals and objectives.
Chapter 12—Employment Conduct, Discipline, and Administrative Review
Discipline Policy, [p. 55]
The intent of this policy is to openly communicate the Tribal standards of conduct, particularly conduct considered undesirable, to all employees as a means of avoiding their occurrence.
The illustrations of unacceptable conduct cited below are to provide specific and exemplary reasons for initiating disciplinary action, and to alert employees to the more commonplace types of employment conduct violations. No attempt has been made here to establish a complete list. Should there arise instances of unacceptable conduct not included in the following *136 list, the Nation may initiate disciplinary action in accordance with policies and procedures.
B. Behavior [p. 56]
8. Discourteous treatment of the public or other employees, including harassing, coercing, threatening, or intimidating others.
HO-CHUNK NATION TRIBAL EMPLOYMENT RIGHTS ORDINANCE
Article XV—Compliance Plan.
Sec. 1. Submission of Acceptable Plan.
(b) The Compliance Plan shall include information relative to the time frame for completion of all registration forms, payroll report forms, and any other documents required by the TERO to ensure that the employer will satisfy the requirements of this Ordinance, or any rules, regulations, or guidelines adopted by the Commission.
Article X—Lay Offs, Involuntary Terminations.
Sec. 2. Involuntary Termination.
(d) Nothing in this Section shall preclude an employer for [sic ] terminating a Ho-Chunk member or any other employee from being laid off [sic ] for cause.
Article XIX Harassment
Sec. 1. Prohibited Activities.
(a) Harassment, intimidation or retaliation against any member of the TERO Program, any member of the Commission, or any employee referred by the TERO program, by any representative or agent of a covered employer, contractor, subcontractor, employee, or certified Indian-owned firm is strictly prohibited. If any person shall be found to have engaged in any prohibited conduct or activities, the TERO Director shall send a formal written warning to the covered employer or entity, with a full description of the nature of the alleged harassment, intimidation, and/or retaliation.
(b) If prohibited conduct or activities continue after a formal warning has been issued by the TERO Director, a formal hearing before the TERO Commission shall be scheduled. Such hearings shall be conducted in accordance with the rules of procedure for hearings prescribed in this Ordinance.
(c) The Commission may impose sanctions in accordance with Article XXIV of this Ordinance if it determines that such employer violated the prohibition against such conduct.
Article XXII—Tribal Employment Rights Commission
Sec. 6. Authority of the Commission.
(f) The Commission shall have the authority to interpret this Ordinance and any rule, regulations or guidelines adopted hereunder and its determination shall be final.
Article XXIV—Sanctions
Sec. 1. Imposition of Sanction s.
(a) The Commission may impose any of the following sanctions or a combination thereof, upon determination that a covered employer has failed to comply with this Ordinance, or any rules, regulation and guidelines adopted by the Commission.
(1) Levy a civil monetary fine to a maximum of one thousand dollars ($1,000) per violation with each day of non-compliance as a separate violation; and
Art. XXV Appeals Procedure
Sec. 1. Right of Appeal.
(a) Any party aggrieved by a decision of the Commission has a right to appeal the decision.
*137 (b)All appeals shall be brought in the Trial Court of the Ho-Chunk Nation, pursuant to the Ho-Chunk Rule of Civil Procedure.
Sec. 2. Procedures for Appeal.
(a) Notice of Appeal shall be filed within thirty (30) days after the issuance of decision and order of the Commission. The Notice of Appeal shall contain a short and concise statement of the reason for the appeal
(b) Upon receiving the Notice of Appeal, the Commission shall have ten (10) days to prepare and transmit a record of its hearing and decision to the Trial Court.
(c) All decisions and orders of the Commission shall be in full force and effect during the pendency of an appeal, absent injunctive relief from the court.
(d) Proper deference shall be given to the administrative expertise of the Commission and to its determination of credibility.
(e) The Court shall not set aside or modify the official actions of the Commission unless it finds the actions to be arbitrary and capricious, unsupported by substantial evidence or contrary to law.
HO-CHUNK NATION RULES OF CIVIL PROCEDURE
Rule 53. Relief Available.
Except in a Default Judgment, the Court is not limited to the relief requested in the pleading and may give any relief it deems appropriate. The Court may only order such relief to the extent allowed by the Ho-Chunk Nation enactments. The Court may order any party to pay costs, including attorney’s fees, I filing fees, costs o f service and discovery, jury and witness costs. Findings of fact and conclusions of law shall be made by the Court in support of all final judgments.
Rule 58. Amendment to or Relief from, Judgment or Order.
(A) Relief for Judgment. A Motion to Amend or for relief from judgment, including a request for a new trial shall be made within ten (10) calendar days of the filing of the judgment. The Motion must be based on an error or irregularity that prevented a party from receiving a fair trial or a substantial legal error that affected the outcome of the action.
(B) Motion for Reconsideration. Upon motion of the Court or by motion of a party made not later than ten (10) calendar days after entry of judgment, the Court may amend its findings or conclusions or make additional findings or conclusions, amending the judgment accordingly. The motion may be made with a motion for a new trial. If the Court amends the judgment, the time for initiating an appeal commences upon entry of the amended judgment. If the Court denies a motion filed under this Rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) days after the filing of such motion, and the Court does not decide a motion under this Rule or the judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(C) Motion to Modify. After the time period in which to file a Motion to Amend or a Motion for Reconsideration has elapsed, a party may file a Motion to Modify with the Court. The Motion must be based upon new information that has come to the party’s attention that, if true, could have the effect of altering or modifying the judgment. Upon such motion, the *138 Court may modify the judgment accordingly. If the Court modifies the judgment, the time for initiating an appeal commences upon entry of the modified judgment. If the Court denies a motion filed under this Rule, the time for initiating an appeal from the judgment commences when the Court denies the motion on the record or when an order denying the motion is entered, whichever occurs first. If within thirty (30) calendar days after the filing of such motion, and the Court does not decide the motion or the Judge does not sign an order denying the motion, the motion is considered denied. The time for initiating an appeal from judgment commences in accordance with the Rules of Appellate Procedure.
(D) Erratum Order or Re-issuance of Judgment. Clerical errors in a court record, including the Judgment or Order, may be corrected by the Court at any time.
(E) Grounds for Relief. The Court may grant relief from judgments or orders on motion of a party made within a reasonable time for the following reasons: 1) newly discovered evidence that could not reasonably have been discovered in time to request a new trial; 2) fraud, misrepresentation or serious misconduct of another party to the action; 3) good cause if the requesting party was not personally served in accordance with Rule 5(c)(l)(a)(i) or (ii), did not have proper service and did not appear in the action; or 4) the judgment has been satisfied, released, discharged or is without effect due to a judgment earlier in time.
Rule 61. Appeals.
Any final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Rules of Appellate Procedure, specifically Rules of Appellate Procedure, Rule 7, Right of Appeal. All subsequent actions of a final Judgment or Trial Court Order must follow the Rules of Appellate Procedure.
Rule 63. Judicial Review of Administra,-tive Adjudication.
(A) Any person aggrieved by a final agency decision may request that the Ho-Chunk Nation Trial Court review such decision by filing a Petition for Administrative Review with the Court within thirty (30) calendar days of such decision, unless otherwise provided.
1. The following laws provide for filing within thirty (30) days:
c. Ho-Chunk Nation Tribal Employment Rights Ordinance
(E) Within thirty (30) calendar days of filing the Petition for Administrative Review, the petitioner shall file a written brief, an Initial Brief unless the petitioner has sought an evidentiary modification pursuant to HCN R. Civ. P. 63(D)(1)(a-b). The respondent shall have thirty (30) calendar days after filing of the brief within which to file a Response Brief. After filing of respondent’s Response Brief, the petitioner may file the Reply Brief within ten (10) calendar days.
(G) At the discretion of the Court, the Court may require an oral argument. The Court shall decide the order of the presentation, the length of time each party is permitted for their presentation, the issues to be addressed in oral argument, and such other matters as may be necessary. An order entitled, Notice of Oral Argument, shall include all such matters and shall be served on all parties at least ten (10) calendar days prior to the date set for argument.
(I) The Court shall not set aside or modify any agency decision, unless it finds the decision was arbitrary and capricious, unsupported by substantial evidence or contrary to law....
*139 FINDINGS OF FACT[1]
1. The Court incorporates by reference Findings of Fact 2-4 from its previous judgment. Order (Reversing and Remanding) at 15.
2. The parties received proper notice of the February 21, 2007 (Aral Argument Hearing.
3. The petitioner’s original employment application with CSI, signed on June 7, 2003, states in relevant part: “I also acknowledge that my employment may be terminated, or any offer or acceptance of employment withdrawn, at any time, with or without cause, and with or without prior notice at the option o f the company or myself.” TERO Ex. 5. In addition, CSI clearly states in its employee handbook that all employment contracts are at will. Reverse & Remand. Order (TERO Comm’n, Apr. 27, 2006) at 9.
4. On July 23, 2003, the respondent received a letter from CSI, instructing her to sign an Employment Agreement by July 31, 2003. Id. at 4.
5. The respondent was terminated on July 28, 2003. Id.
6. On August 11, 2003, the Commission faxed the TERO application to CSI. Id.
7. CSI filed its TERO application and paid the bid permit fee on August 18, 2003. Id.
8. The parties agreed to remove the political patronage issue from review by the Court. Oral Argument Hr’g (LPER at 6, Feb. 21, 2007, 01:20:20 CST).
9.The parties agreed to remove the tribal discrimination issue from review by the Court. Id., 01:20:38 CST.
DECISION
The Court thoroughly examined the origin of administrative agency review and associated standards of review^ within a prior case. Regina K. Baldwin et al. v. Ho-Chunk Nation et al., CV 01-16,-19,-21 (HCN Tr. Ct., Jan. 9, 2002) at 12-26. The Court directs the parties to that decision for a comprehensive discussion.[2] For purposes of this case, the Court reproduces the portion of the discussion dealing with formal on-the-record adjudication.
Executive agencies may engage in formal on-the-record adjudication, resulting in the promulgation of rules through the formation of a body of case precedent. See, e.g., Dickinson v. Zurko, 527 U.S. 150, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999); Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998); Bowman Transp. v. Ark.-Best Freight Sys., 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974). In reviewing adjudicative rulemaking, as well as other forms of agency action, courts begin by recognizing that Congress intended the Administrative Procedure Act to “establish[ ] a scheme of ‘reasoned decisionmaking.’”[3] Allentown, 522 U.S. at 374, 118 *140 S.Ct. 818 (quoting Motor Vehicle Mfrs. Ass’n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 52, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)). Courts then perform a two-tiered analysis, determining whether the adjudicative rule satisfies a substantial evidence standard, and, if so, whether the rule escapes a designation of arbitrary and capricious.
The two (2) inquiries represent “ ‘separate standards.’ ” Bowman, 419 U.S. at 284, 95 S.Ct. 438 (quoting Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 413, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). Consequently, a court “may properly conclude! ] that, though an agency’s finding may be supported by substantial evidence, ... it may nonetheless reflect an arbitrary and capricious action.” Bowman, 419 U.S. at 284, 95 S.Ct. 438. In such an event, the Court would afford no deference to the adjudicative rule of the agency precisely because the rule could not withstand the more deferential arbitrary and capricious standard.
The substantial evidence standard has no application beyond the review of “record-based factual conclusion^],” and only in unusual circumstances will agency action surviving a substantial evidence review falter when scrutinized further. Dickinson, 527 U.S. at 164, 119 S.Ct. 1816. In performing the second-tier of analysis, arbitrary and capricious review,
[a] reviewing court must “consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.... Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.” The agency must articulate a “rational connection between the facts found and the choice made.” While [a court] may not supply a reasoned basis for the agency’s action that the agency itself has not given, WK [a court] will uphold a decision of less than ideal clarity if t he agency’s path may reasonably be discerned.
Bowman, 419 U.S. at 285-86, 95 S.Ct. 438 (citations omitted).
Typically, however, a court will suspend its review after ascertaining the presence of substantial evidence. “Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Edison Co. v. Nat. Labor Relations Bd., 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). The relevant evidence must retain probative force, and, therefore, “[m]ere uncorroborated hearsay or rumor does not constitute substantial evidence.” Id. at 230, 59 S.Ct. 206. And, a court must examine the evidence supporting the decision against “the record in its entirety, including the body of evidence opposed to the [agency’s] view.” Universal Camera Corp. v. Nat. Labor Relations Bd., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951); see also 5 U.S.C. § 706.
Nonetheless, as noted above, an adjudicative rule rightfully subjected to the two-tiered analysis must also at its core represent the outcome of a reasoned deliberation. “[T]he process by which [an agency] reaches [its] result must be logical and rational.” Allentown, 522 U.S. at 374, 118 S.Ct. 818. Courts accordingly must insure compliance with the requirement of reasoned decision-making. In this regard,
[i]t is hard to imagine a more violent breach of that requirement than applying a rule of primary conduct or a stan *141 dard of proof which is in fact different from the rule or standard formally announced. And the consistent repetition of that breach can hardly mend it.... The evil of a decision that applies a standard other than the one it enunciates spreads in both directions, preventing both consistent application of the law by subordinate agency personnel ..., and effective review of the law by the courts.
Id. at 374-75, 118 S.Ct. 818. The inconsistent or contrary application of an adjudicative rule must result in a finding that the agency has failed to support its action by substantial evidence. A court cannot deem subsequent aberrations as simply agency interpretations of the underlying rule. Id. at 377-78, 118 S.Ct. 818.
To reiterate, a court must determine whether the challenged administrative action rests upon substantial evidence and escapes a characterization of arbitrary and capricious. Furthermore, the need for reasoned decision-making and the consistent application of resulting decisions underlie and overarch the statutorily based analysis. The Court shall now engage in the prevailing standard of review in relation to the case at bar.
I. Does the petitioner state a cognizable claim for harassment under applicable law?
The TERO establishes three (3) classes of persons permitted to bring a harassment claim: members, Commission members, and TERO referrals. TERO, Art. XXII, § 6(f). The petitioner is not a member of the Commission, nor was she a TERO referral. The final designation, “member,” is not defined within TERO. In the absence of clear statutory direction, the Ordinance grants the Commission the right to interpret its provisions. Id., Art. XIX, § 1(a). The Commission has adjudged the petitioner not within the protected class required by the harassment provision. Reverse & Remand Order at 9. The Commission found since the petitioner was not a TERO referral, she was not within the bounds of the Ordinance, and her harassment claim should be dismissed. Since this decision is not arbitrary and capricious, the Court honors this interpretation.
Furthermore, the Court cannot accept the petitioner’s alternative argument that in the absence of the TERO the Ho-Chunk Nation Personnel Policies and Procedures Manual (hereinafter Personnel Manual) in effect at the time would control. The PERSONNEL MANUAL protects tribal employees against harassment by the Nation and its sub-entities, but does not protect against the actions of outside employers, such as CSI. Pees. Manual at 2. Specifically, the “policies are issued as the official directive of the obligation of the Ho-Chunk Nation and the employees to each other and to the public.” Id., Intro, at 2. The petitioner is clearly not an employee of the Nation, and, therefore, the Personnel Manual has no application to this cause of action.
Another theory exists that might open the claim of harassment to judicial scrutiny. The Court has in the past honored claims based on traditional notions of a right to privacy and freedom from harassment, such as the right to exclude persons from private property. Dorothy Decorah v. Kim Whitegull, CV 02-17 (HCN Tr. Ct., Mar. 1, 2002). The Court has additionally recognized a right to freedom from harassment under the traditional theory of respect for elders. Pauline Mike v. Loylee Mike, CV 99-42 (HCN Tr. Ct., July 23, 1999). However, custom and tradition was not raised as a basis for jurisdiction in the present case. The petitioner failed to establish whether a customary harassment *142 claim could extend to include the facts and circumstances of her case. The Ho-Chunk Nation Traditional Court has not previously address harassment in those terms.
The petitioner has failed to establish the Court’s jurisdiction over her harassment claim under any of the possible applicable bases. She is not covered by the TERO, she is not an employee of the Nation, nor has she asserted a basis for her claim under the customs and traditions of the Nation. Since this Court may not exercise subject matter jurisdiction over the harassment claim under the TERO, Personnel Manual, or custom and tradition, these claims must be dismissed.
II. Does the Commission’s imposition of fees against CSI withstand appellate review?
The original premise of CSI’s TERO fíne was linked to a presumption that CSI received the TERO registration twenty-five (25) days prior to the filing date. Reverse & Remand Order at 10. This determination was regrettably reached without reviewing the original hearing transcript. The Commission has since reviewed the hearing transcripts and altered the dates of CSI’s, noncompliance, and adjusted the imposed fine accordingly. Id. Additionally, the language of the Ordinance itself makes the imposition of any such fines for non-compliance purely discretionary on the part of the Commission. TERO, Art. XXIV, § 1(a)(1). The petitioner could conceivably claim that the Commission imposed fines in an inequitable manner, i.e., in violation of equal protection principles. See Constitution of the Ho-Chunk Nation (hereinafter Constitution), Art. X, § 1(a)(8). The petitioner, however, made no such claim and presented no evidence to support an arbitrary application of the Commission’s power amongst different vendors. Since the decision of the Commission had a rational basis in the record, and since all such fines are discretionary, the Court upholds the decision of the Commission.
Moreover, CSI claimed a lack of knowledge of the TERO, and as a result remained unaware of how to come into compliance with its dictates. The respondents provided the below reasons for this lack of knowledge. First, CSI had previously given only technical assistance to clients, not employees, which would not have brought it under the purview of the statute. Second, CSI claims that the nature of the Ordinance was in question by the Nation itself, which was unsure at the time of the inception of the contract whether TERO applied to construction contracts, or also to gaming contracts. Tr. TERO Comm’n Hr’g at 232-233. CSI claims when they were made aware that their contract fell within the intended scope of the Ordinance, they immediately took steps to come into compliance with TERO. Id at 16.
In the early twentieth century, the United States Supreme Court established precedent that citizens of the United States are charged with constructive knowledge of the Nation’s laws. “It has been held from the earliest days, in both Federal and state courts, that a mistake of law, pure and simple, without the addition of any circumstances of fraud or misrepresentation, constitutes no basis for relief at law or in equity....” Utermehle v. Norment, 197 U.S. 40, 56-57, 25 S.Ct. 291, 49 L.Ed. 655 (1905). The Seventh Circuit similarly concluded in 1998: “[i]gnoranee of a statute is generally no defense even to a criminal prosecution, and it is never a defense in a civil case.” Torres v. INS, 144 F.3d 472, 474 (7th Cir.1998).
The jurisprudence of the Ho-Chunk N ation Supreme Court has been divided on the issue of charging members, let alone *143 non-members, with constructive knowledge of the Nation’s laws. In Whiteeagle, the Supreme Court followed federal court precedent in imputing constructive knowledge of the law. The Court charged Ms. Whiteeagle with constructive knowledge of the Personnel Manual regarding time-lines within the Administrative Review Process. The Supreme Court noted “[a]s an employee and member of the HCN, the Appellee bears the responsibility of knowing the governing laws of the Nation.” Marie Whiteeagle v. Wis. Dells Head Start et al., SU 01-14 (HCN S.Ct., Nov. 27, 2001) at 1. Since Ms. Whiteeagle failed to strictly adhere to the timelines of administrative grievances, the Supreme Court denied her appeal.
Five (5) years later, however, in an employment action by Mr. Kenneth L. Twin, the Supreme Court leaned the opposite way, finding employees of the Nation were not imputed with knowledge of all tribal laws. “This Court is not yet prepared to assert that all employees must know all laws of the Nation, but it is inclined to adopt this broad line of thought where a supervisory position is involved.” Kenneth L. Twin v. Toni McDonald, SU 05-09, 2006 WL 5820604, 6 Am. Tribal Law 172, 179 (HCN S.Ct., June 30, 2006) (citing Susan Bosgraff v. HCN Sec. Dep't, CV 01-01 (HCN Tr. Ct., Aug. 6, 2001) at 9). Until the Supreme Court reaches a consensus within its own jurisprudence on this sensitive issue, the Trial Court shall not apply the doctrine of constructive knowledge against others.
III. Did CSI need to provide the petitioner with minimum procedural due process prior to her discharge?
Since the petitioner is an employee of a private corporation, CSI, any action taken by CSI would not immediately implicate constitutional due process considerations. See Const., Art. X, 1(a)(8) (curtailing governmental action). The Ho-Chunk Nation Legislature did not intend that TERO elevate all private employers subject to its provisions to the status of arms of the Nation’s’ government. Since actions by private entities are not encompassed within the purview of the Constitution, the only way that procedural due process considerations would attach under the Constitution is if the Nation’s government acted in complicity with the private actor.
For such complicity to occur, the employer would need to seek pre-approval for the termination from the Commission. Otherwise, the Commission is not sufficiently involved in the actions of the private employer to invoke constitutional protections. The Court has developed a wealth of case law pertaining to procedural due process requirements. See, e.g., Willard Lonetree v. Larry Garvin, CV 06-74 (HCN Tr. Ct., Mar. 9, 2007); Gary Lonetree, Sr. v. John Holst, as Slot Dir., et al., CV 97-127 (HCN Tr. Ct., Sept. 24, 1998). However, even under the Personnel Manual,
[t]he Ho-Chunk Nation ... asserts that it has the right to employ the best qualified persons available: that the continuation of employment is based on the need for work to be performed, availability of revenues, faithful and effective performance, proper personal conduct, and continuing fitness of employees; and that ail employees are terminable for cause unless otherwise specified in writing as a prescribed employment term.
Pees. Manual, Intro, at 2 (emphasis added). In this case, the terms of, the petitioner’s employment were clearly altered in writing to reflect an at will relationship.
While it appears as if the TERO provision imparts a for cause designation to tribal employees, the provision in question *144 is both poorly worded and vague. TERO, Art. X, § 2(d). Nowhere within the TERO does the Legislature restrict freedom of contract, or even discuss at will employment. The Commission believes the petitioner’s employment is at will, and prior to extending a work permit to CSI, the Commission was obligated to review corporate information pertaining to TERO compliance, logically including CSI’s policy of at will employment. Id., Art. XV, § 1(b). If the Commission found the company policy to be contrary to the requirements of the Ordinance, it was free to deny the permit or mandate that CSI alter its hiring policies. The Commission, however, took no such action. Similarly, under the former Personnel Manual, the ability to contract could presumably be delegated to an Executive Director to provide for at will employment of a tribal member. Redress of such a decision would lie with the delegating entity or individual, to ask “why am I at will, and the other employees of the Nation are not?” Such redress, “whether to the Legislative or Executive Branch”, is political, not judicial.
Due to the vagaries in the act, the Court finds it nearly impossible to determine whether the actions of the Commission deserve an arbitrary and capricious designation. If an individual perceives that th e Commission’s actions serve to circumvent the Ordinance, their remedy must’ be political, not judicial. While some limited Equal Protection argument might exist, the petitioner failed to raise this point to either the Commission or the Court, and the Court thereby declines to review this matter. As a result, the Court likewise upholds the decision of the Commission to sustain the petitioner’s termination.
The parties retain the right to file a timely post judgment motion with this Court in accordance with HCN R. Civ. P. 58, Amendment to or Relief from Judgment or Order. Otherwise, “[a]ny final Judgment or Order of the Trial Court may be appealed to the Supreme Court. The Appeal must comply with the Rules of Appellate Procedure [hereinafter HCN R.App. P], specifically Rules of Appellate, Procedure, Rule 7, Right of Appeal.” HCN R Civ. P. 61. The appellant “shall within sixty (60) calendar days after the day such judgment or order was rendered, file with the Supreme Court Clerk, a Notice of Appeal from such judgment or order, together with a filing fee as stated in the appendix or schedule of fees.” HCN R.App. P. 7(b)(1). “All subsequent actions of a final Judgment or Trial Court Order must follow the [HCN R.App. P.].” HCN R. Civ. P. 61.

 The Court appreciates the assistance of Law Clerk Jennifer L. Tilden in the preparation and drafting of this order.

. The Court does not perform a de novo review of administrative agency decisions, and, consequently, generally refrains from making independent factual findings. TERO, ART. XXV, § 2(e); see also HCN R. Civ. P. 63(1). Unless otherwise clearly indicated, the below findings of fact constitute relevant findings of the administrative agency for purposes of this judgment as articulated within the administrative decision. The Court shall only propose alternative findings of fact in the event that the agency's factual rendition is not supported by substantial evidence. See infra p. 8.

. The full text of Baldwin appears at http:// www.ho-chunknation.com/government/ judicial/opinions/CV% 202001 /cvO 1 -16_cv01 - 19_cv01-21% 20Order% 20(Deter.% 20Jud.% 20DeferJ.pdf.

. The Ho-Chunk Nation Legislature has incorporated the acknowledged federal standards within certain legislation. See, . e.g., *140 gaming ordinance, § 1101(c)(v); compare 5 U.S.C. § 706.